815 So.2d 908 (2002)
STATE of Louisiana
v.
Patrick W. WILLIAMS.
No. 2001-0998.
Court of Appeal of Louisiana, Third Circuit.
February 6, 2002.
*909 Honorable J. Phillip Haney, District Attorney, New Iberia, LA, Counsel for Plaintiff/Appellee, State of Louisiana.
Edward Kelly Bauman, Louisiana Appellate Project, Lake Charles, LA, Counsel for Defendant/Appellant, Patrick W. Williams.
Patrick W. Williams, Louisiana State Prison, Angola, LA, pro se.
Court composed of ULYSSES GENE THIBODEAUX, MARC T. AMY and ELIZABETH A. PICKETT, Judges.
AMY, Judge.
The defendant was found guilty, by a jury, of aggravated burglary, a violation of La.R.S. 14:60, and second degree kidnapping, *910 a violation of La.R.S. 14:44.1. The trial judge sentenced the defendant to thirty years at hard labor for the aggravated burglary conviction to run concurrent with the second degree kidnapping sentence of forty-five years without benefit of parole, probation, or suspension of sentence. The second degree kidnapping sentence was imposed as a habitual offender. For the following reasons, we affirm the convictions and sentences of Mr. Williams.

Factual and Procedural Background
The State alleged that on December 27, 1997, at about 9:30 p.m., the defendant entered the home of the approximately eighty-year-old victim, Mrs. Evelyn Patout, through a window. According to Mrs. Patout's testimony, she was in bed reading when someone entered her bedroom and covered her with a blanket. Mrs. Patout testified that she ceased any struggling because the assailant threatened to kill her unless she cooperated. The assailant demanded money and car keys and Mrs. Patout told him where he could find them. Still covered by the blanket, Mrs. Patout was led outside and forced into the trunk of her car. After forcing Mrs. Patout into the trunk of the car, the assailant took the blanket from her. The State contends that, with Mrs. Patout in the trunk, the defendant began driving the vehicle. Mrs. Patout stated that after riding in the car, she began to hear other voices and decided to keep quiet because she was fearful for her safety.
The State contends that while driving Mrs. Patout's vehicle, the defendant picked up Wilton "Bank" Vital. Mr. Vital testified that he had never met the defendant before and that the defendant introduced himself as "Kenny." Mr. Vital also stated that "Kenny" was looking for drugs and wanted to rent the car out as an exchange or payment. Mr. Vital brought the defendant to meet Paul Collins and his brother. According to the State's version of events, after some negotiating, the defendant and Paul Collins agreed that Collins would give the defendant thirty dollars worth of crack cocaine in exchange for use of the car for five hours. After the exchange took place, the defendant told Collins where to leave the car and the defendant left. Mr. Vital testified that Collins took him back to the club where the defendant originally picked him up.
According to Collins' testimony, early on the morning of December 28, 1997, he brought the car back to the home identified by the defendant. However, no one at that home had ever heard of "Kenny." Collins testified that after trying a few homes and not finding "Kenny," he went to his girlfriend's house.
Later that morning, Mrs. Patout was discovered by Perry Comeaux. Mr. Comeaux was picking up some people to go to church when he heard noise coming from the trunk of the car. Mr. Comeaux knocked on doors until he found Collins who said that he had the keys to the car. The record reflects that both men were surprised to open the trunk and find Mrs. Patout. Consequently, the defendant was arrested later that day at a store in Lydia, while trying to cash one of Mrs. Patout's checks.
By bill of information, the defendant was charged with one count of aggravated burglary in violation of La.R.S. 14:60, and one count of second degree kidnapping, in violation of La.R.S. 14:44.1. Mr. Williams' jury trial commenced on January 10, 2001 and ended on January 12, 2001, with the jury's verdict of guilty of aggravated burglary and second degree kidnapping. Sentencing was scheduled for January 19, 2001 and the defendant filed a pro se motion to overturn the convictions. The trial court interpreted this as a motion for a new trial, which the court heard and *911 denied. On the same day, the defendant was sentenced to thirty years at hard labor for the aggravated burglary conviction. The sentence was ordered to run concurrent with a thirty-year sentence at hard labor for the second degree kidnapping charge. Both sentences were issued without the benefit of parole, probation, or suspension of sentence. Following the sentencing, the defense orally moved for a reconsideration of the sentences, without reasons, which was denied. Subsequently, the State charged the defendant as a multiple offender pursuant to La.R.S. 15:529.1. The defendant pled not guilty and a hearing was set for January 31, 2001.
At the hearing on January 31, 2001, the defendant was adjudicated a second-felony offender, relying on a prior conviction for possession of cocaine. Thus, the trial court vacated its original sentence for the second degree kidnapping and sentenced the defendant to forty-five years at hard labor, without the benefit of parole, probation, or suspension of sentence. As previously, this sentence was ordered to be served concurrently with the thirty-year sentence for aggravated burglary.
The defendant now appeals, assigning three points of error. First, the defendant contends that the trial court erred in sentencing the defendant immediately after the denial of his Motion for New Trial, contrary to the provisions of La.Code Crim.P. art. 873. Next, the defendant argues that the evidence presented at trial, when viewed in the light most favorable to the prosecution, was insufficient to convict him. Last, the defendant argues that the sentences imposed by the trial court are excessive.

Discussion

Errors Patent
In accordance with La.Code Crim.P. art. 920, the scope of appellate review includes "an error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." After a review of the record, this court finds that there are two errors patent.
First, the defendant was not informed of his right to a hearing and his right to remain silent at his habitual offender adjudication. According to this court, only harmless error results from the trial court's failure to advise of rights when the defendant remains silent throughout the proceeding and the state presents competent evidence to prove the existence of the defendant's prior conviction and his identity as the person previously convicted. State v. Washington, 96-656 (La.App. 3 Cir. 1/15/97); 687 So.2d 575, citing, State v. Hodges, 94-898 (La. App. 3 Cir. 3/1/95); 651 So.2d 487. As in the Washington case, the defendant did not acknowledge his prior offenses or admit the truth of the allegations contained in the habitual offender bill of information. Furthermore, in the present case, the State presented the testimony of the defendant's parole officer from the prior felony and presented the court with his criminal record. Thus, the trial court's failure to advise the defendant of his right to remain silent at the habitual offender adjudication constitutes harmless error.
The second error patent, which the defendant also assigns as error in his appeal, is the trial court's failure to delay sentencing for twenty-four hours after the denial of the defendant's motion for new trial. We address this issue below.

Insufficient Evidence
The defendant alleges that the evidence at trial was insufficient to establish that he was the perpetrator of the crimes for which he was convicted. When the issue of sufficiency of the evidence is raised on appeal, the critical inquiry of the *912 reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983), State v. Morris, 414 So.2d 320 (La.1982), State v. Roberts, 00-1513 (La. App. 3 Cir. 5/9/01); 786 So.2d 933. Furthermore, La.R.S. 15:438 mandates that when circumstantial evidence is used to prove the commission of a crime, the rule is: "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." However, one must consider, "Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." State v. Cummings, 95-1377 (La.2/28/96); 668 So.2d 1132, 1134.
The defendant was convicted of aggravated burglary and second degree kidnapping. Aggravated burglary is defined by La.R.S. 14:60 as:
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender, ...
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
La.R.S. 14:33 defines a battery as "the intentional use of force or violence upon the person of another." As stated above, the defendant was also found guilty of second degree kidnapping. La.R.S. 14:44.1 defines this offense, in pertinent part, as:
A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is: ...
(3) Physically injured or sexually abused....
B. For the purpose of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another.
Accordingly, the defendant does not dispute that the alleged crimes occurred, only that he was the one who committed them.
Defendant bases his argument around the fact that no one identified him as ever being at Mrs. Patout's home and that the forensic evidence was not conclusive. At trial, the defendant was positively identified, by Paul Collins and Wilton Vital, as the person driving the white car that was later discovered to belong to Mrs. Patout. In his brief, the defendant cautions against believing the two men's testimonies because Mr. Collins had charges pending in another matter and Mr. Vital was an admitted drug user. However, this court has stated that: "In reviewing the evidence, this court must keep in mind that it is the fact finder's role to weigh witness credibility, and we should not second-guess those credibility determinations beyond the sufficiency evaluations under the Jackson standard of review." State v. Leger, 00-920, p. 2 (La.App. 3 Cir. 12/20/00); 775 So.2d 1169, 1170.
David Baudoin, a detective with the Iberia Parish Sheriff's Office, investigated the kidnapping. Baudoin testified that he interviewed Collins at the New Iberia Police Department. Collins had been taken to the department for questioning and then detained on an outstanding warrant. While Baudoin was interviewing Collins, the police department received a phone call from Lydia's Food Store in Patoutville with the information that one of the victim's checks had been cashed around noon. *913 Detective Baudoin went to the store to document the activity.
Later that day, on December 28, 1997, the defendant was arrested at Lydia's Food Store attempting to cash one of Mrs. Patout's checks. Dashia Broussard, who was working the afternoon shift, had been told of Mrs. Patout's kidnapping and was aware that a male had cashed one of her checks in the store earlier in the day. While Ms. Broussard was working her shift, the defendant entered the store and attempted to cash another one of Mrs. Patout's checks. Ms. Broussard told her manager and they called the police, who came to the store and arrested the defendant. At trial, Ms. Broussard positively identified the defendant. However, the clerk from earlier in the day could not specifically identify the defendant, but knew that it was an African American male who cashed Mrs. Patout's check.
After the defendant was arrested, he was transported to the police department to be questioned and booked with forgery. As the defendant was being processed through booking, Detective Baudoin noticed that Collins was signaling to him. Detective Baudoin testified that Collins informed him that the defendant was "Kenny" from the previous night.
In support of his argument, the defendant points to a few instances to assert that there was insufficient evidence to prove that he was the man who entered the victim's home and forced her into the car. First, the defendant points to the fact that there were no fingerprints found in the victim's home or in the car that match his fingerprints. He also points out that the State's expert forensic DNA analyst was unable to match the defendant's DNA with the DNA found on the cigarette butts left in the car. Next, the defendant asserts that of more than a dozen shoe prints found inside of Mrs. Patout's house, only three of the prints matched the shoes the defendant was wearing when he was taken into custody. Finally, the defendant points out that the victim could not identify him as her kidnapper.
Mark Kurowski, a forensic chemist with the Acadiana Crime Laboratory and an expert in shoe print identification, testified that he located and lifted several shoe prints from inside the victim's home. Kurowski testified that the shoe prints began at an open window and proceeded to the victim's bedroom. The lifted prints were compared to the shoes that the defendant was wearing at the time he was taken into custody. Kurowski testified that the defendant's shoes matched the first three prints he compared perfectly. Kurowski stated that he did not attempt to make anymore matches because it would have been redundant to do so.
Katherine Cross, the State's DNA analyst, testified that there were five cigarette butts found in the car, four were Kool brand and one was Marlboro. While none of the DNA found on the cigarettes matched the defendant's DNA, Wilton Vital testified that after the Collins brothers got into the car, they all bummed cigarettes from the defendant. Furthermore, Vital testified that the brand of the defendant's cigarettes was Kool.
Detective David Landry testified that he searched the premises for fingerprints and anything else that could associate the perpetrator with the crime. He stated that there were not any prints that could be used for identification inside of the car, but the outside of the car did have identifiable prints. According to Detective Landry's testimony, the fingerprints found on the outside of the car belonged to the defendant.
Finally, the victim was unable to identify the defendant as the man who kidnaped *914 and robbed her. However, Mrs. Patout did testify that she knew the defendant and that approximately a year earlier, he had done various yard work and some in-house work for her. Also, Mrs. Patout testified that the man who robbed her appeared to know the layout of her home. She testified that after she told him that the keys to the car were on the mantel in the living room:
A. He got me up and I started walking forward, but he said, "We're going to go through the bathroom," which is to the right.
Q. Okay. Did you think anything unusual about that statement?
A. I just wondered why he knew where the bathroom was.
Circumstantial evidence consists of the proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Donahue, 572 So.2d 255 (La.App. 1 Cir.1990). After reviewing the record, we find that the circumstantial evidence in this case was abundant and that by evaluating the evidence in the light most favorable to the state, any rational trier of fact could have found the elements of the crimes involved proven beyond a reasonable doubt. Furthermore, every reasonable hypothesis could have been excluded. Therefore, we find that this assignment of error has no merit.

Delay of Sentencing
As pointed out in the errors patent review, the defendant argues that the trial court erred in sentencing him immediately following the denial of his motion for new trial, contrary to the provisions of La.Code Crim.P. art. 873. This Article states in pertinent part that, "If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately." Accordingly, a sentence imposed in violation of La.Code Crim.P. art. 873 is void unless the defendant expressly waived the time lapse requirement or was not prejudiced. State v. Augustine, 555 So.2d 1331 (La.1990). See also, State v. Schmidt, 99-1412 (La.App. 3 Cir. 7/26/00); 771 So.2d 131.
In the present case, the defendant expressly waived the delay in sentencing after his motion for new trial was denied as evidenced by the following colloquy:
BY THE COURT:
.... Okay. You ready for sentencing?
BY MR. COLWART:
Defense is ready, Your Honor.
However, the defendant also asserts that he was prejudiced by the trial court's failure to adhere to the twenty-four-hour delay because he was unable to present mitigating circumstances and letters on his behalf to the court. After a lengthy review of the facts, the trial judge stated:
The Court has not heard any mitigating factors whatsoever. The defendant was given an opportunity to present testimony on any mitigation that might be at hand and none was offered. The offender particularly did not accept responsibility for his act, but in spite of overwhelming evidence to the contrary continues to deny any involvement in this crime. There are no mitigating factors that have been brought to this Court's attention in this case. There were some allegations in some of the letters that Mr. Collins was writing, complaining about his incarceration, that he had a wife and child and that he was deprived of the opportunity to visit with his wife and child. Though there's no evidence in the record that he was ever *915 married or that any child belongsor he is the father of any child whose care and comfort he was deprived of, the Court will consider that as a mitigating factor nonetheless in the sentence in this case.
The defendant, in his brief, did not present any potential mitigating factors that were overlooked besides possible letters from family and friends. However, the defendant did not illustrate how a twenty-four-hour delay would have resulted in a lesser sentence. Because the defense expressly waived the delay period and the defendant has not shown that he was prejudiced, this assignment is without merit.

Excessive Sentence
Finally, the defendant argues that his sentences are constitutionally excessive and not in conformity with La.Code Crim.P. art. 894.1. Specifically, the defendant argues that the trial court failed to consider any mitigating circumstances.
At sentencing, the defendant made an oral motion to reconsider the sentences, but failed to give reasons. However, when the defendant was re-sentenced for the second degree kidnapping charge, the defendant neglected to make a motion to reconsider. When a defendant moves for reconsideration of sentence without specifying the ground for reconsideration, this court is limited to a "bare bones" review of excessiveness. State v. Barling, 00-1241 (La.App. 3 Cir. 1/31/01); 779 So.2d 1035. In State v. Dorthey, 623 So.2d 1276 (La.1993), the Louisiana Supreme Court held that a sentence is constitutionally excessive if it "makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime." Additionally, when a defendant does not make or file a motion to reconsider his sentence, this court is generally precluded from reviewing the defendant's sentence on appeal. La.Code Crim.P. art. 881.1; Id. Thus, because the defendant failed to make a motion to reconsider the second degree kidnapping sentence at the habitual offender hearing, we will only review the aggravated burglary sentence.
The defendant received a thirty-year sentence for a conviction of aggravated burglary in violation of La.R.S. 14:60, which permits a maximum term of imprisonment of thirty years. In State v. Abdullah, 98-216 (La.App. 3 Cir. 10/21/98); 722 So.2d 23, this court held that absent a showing of abuse of discretion by the trial court, a sentence imposed within statutory range is not deemed excessive.
At the initial sentencing hearing, the trial judge stated:
BY THE COURT:
All right. The Court has considered all of the sentencing guidelines under Article 894.1 and finds that there is an undue risk that during a period of a suspended sentence or probation the defendant will commit another crime. Indeed he committed this crime while he was on probation for unauthorized use of a movable in docket number 96-917....
The aggravating factors under Article 894.1B that the Court finds applicable in this case are B.(1), the offender's conduct during the commission of the offense manifested deliberate cruelty to the victim. To take an eighty-something year old lady from her bedroom, throw a sheet on her, scare her half to death, throw her in a trunk of a car and leave her to die in the cold can't be any more cruel....
The offender knew or should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age....

*916 The offender created a risk of death or great bodily harm to more than one person. In this particular case there's only one person to whom there was a risk of death or great bodily harm to and that was Mrs. Patout.
The offender used threats of or actual violence in the commission of the offense. When Miss Patout was violently taken from her home with a sheet or blanket and thrown in the trunk of her car and left to die overnight in the cold, that is an actual violence in the commission of the offense.
The offender committed the offense in order to facilitate or conceal the commission of another offense....
The offense resulted in significant permanent injury or significant economical loss to the victim. In this particular case the significant permanent injury to Miss Patout was an emotional injury. How is she gonna be at peace in her own home now knowing that this has happened to her? ...
The Court has not heard any mitigating factors whatsoever. The defendant was given an opportunity to present testimony on any mitigation that might be at hand and none was offered. The offender particularly did not accept responsibility for his act, but in spite of overwhelming evidence to the contrary continues to deny any involvement in this crime.
The defendant has not presented this court with any substantial indication that the trial court abused its discretion when it imposed a sentence of thirty years for aggravated burglary on the Defendant. As stated above, the trial court complied with La.Code Crim.P. art. 894.1 and the record reflects that sufficient consideration was given to the codal guidelines for sentencing. Thus, this assignment is without merit.

DECREE
For the above reasons, the convictions and sentences of Patrick Williams are affirmed.
AFFIRMED.