NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-121

STATE OF LOUISIANA

VERSUS

RICKIE CUSKEY
AND
DEBRA MCANULTY

**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 60255
HONORABLE ROBERT E. BURGESS, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Billy Howard Ezell, Judges.

AFFIRMED AS AMENDED.

Anna L. Garcie
Assistant District Attorney
P. O. Box 1557
Many, LA 71449
(318) 256-6246
Counsel for Plaintiff/Appellee:
    State of Louisiana

Peggy J. Sullivan
Louisiana Appellate Project
P. O. Box 2775
Monroe, LA 71207-2775
(318) 387-6124
Counsel for Defendant/Appellant:
    Debra McAnulty

**Edward K. Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**Counsel for Defendant/Appellant:**
**Rickie Cuskey**

**DECUIR, Judge.**

The Defendants, Rickie Cuskey and Debra McAnulty, were charged in the same indictment with two counts of aggravated rape. The jury returned verdicts of guilty on all charges.

The Defendants were sentenced to life imprisonment on each count to be served without benefit of probation, parole, or suspension of sentence. Additionally, the trial court ordered that the sentences be served consecutively.

The Defendants both filed a Motion for Appeal and Designation of Record. Cuskey asserts two assignments of error. Therein, he alleges the verdict was contrary to the law and evidence and the trial court erred in imposing consecutive life sentences.

McAnulty asserts four assignments of error. Therein, she contends the evidence did not support convictions for aggravated rape, the trial court erred in refusing to allow trial counsel to respond to remarks made by a prospective juror, the trial court erred in denying the Motion for Severance, and the trial court failed to sufficiently articulate the basis for imposition of consecutive life sentences.

## FACTS

On January 6, 2005, the Sabine Parish Office of Community Services received a report that someone held down V.F. and put his or her mouth on her genitals. Child protection investigator, Cathy Hippler, interviewed V.F. the following day. V.F., who was ten years old at the time, alleged that V.S., her eleven-year-old friend, had held her down, removed her clothes, and licked her genital area. Subsequently, Hippler interviewed V.S. who denied the allegation but told Hippler that the Defendants abused both her and V.F.

Ultimately, both V.S. and V.F. reported watching pornography at the Defendants' home while Cuskey masturbated, seeing Cuskey perform a trick with a

dildo, and being encouraged to use dildos on each other. In addition, both girls described being driven to a cemetery by the Defendants, where they were encouraged by McAnulty to perform oral sex on Cuskey which they did. Both girls described a substance coming out of Cuskey's penis into V.S.'s mouth. The girls also described an incident where the Defendants were having sex on their couch and McAnulty encouraged them to lick Cuskey's genitals while they were having sex. V.S. did so while V.F. acted as a lookout at the front door. Hippler's impression was that the girls were being truthful.

Detective Jack Stanton also interviewed V.S. and V.F and testified that the girls reported essentially the same events to him with the addition of the fact that McAnulty had nipple piercings. Detective Stanton's impression was that the girls were not telling him everything and he believed they were being less than truthful in the interviews.

V.S. saw Dr. Christina Lord, an expert in the field of obsterics and gynecology. V.S. again denied assaulting V.F. and reported that V.F. smoked ice and the Defendants did crystal. She also reported that the Defendants swam to an island in a public lake and pretended to rape each other. She also talked about the Defendants touching her chest and behind.

Dr. John Simoneau, a forensic psychologist, interviewed both girls and testified that V.F. reported that the Defendants touched her outside her clothing and later touched her skin. She described two different dildos and being forced to touch herself with them. She also reported that, at the cemetery, Cuskey tried to put his private down her private place and put his penis in both her and V.S.'s mouth. V.S. reported that Cuskey's penis could not fully fit in her mouth. She described another incident where Cuskey touched her in a sexual manner while driving. Dr. Simoneau

2

found the reports of both girls to be credible. He noted especially that it was significant V.F. first reported being touched outside her clothes and that V.S. reported that her mouth was too small.

The girls also described being asked to lick McAnulty's breasts and to insert the dildos into themselves. In addition, V.S. testified that McAnulty told her that if she ever told anybody what happened, the Defendants would go to jail for a long time, and they would not be friends with them, and no one would trust the girls again. V.F. testified she did not report these things because she thought she would get in trouble with the police.

The Defendants admitted that they had dildos and pornography and that it was possible the girls could have gotten access to them, but otherwise they denied the allegations. They point to inconsistencies in the girls' reports and claim that the girls are making up the allegations. Cuskey's niece, her mother, and McAnulty's best friend testified on behalf of the Defendants in an attempt to discredit the girls.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent: The trial court failed to specifically deny the Defendants' eligibility for diminution of sentence on the convictions of aggravated rape. Louisiana Revised Statutes 15:537(A) requires that diminution of sentence be denied to a person who is sentenced to imprisonment for the crime of aggravated rape.

This court addressed this issue in *State v. S.D.G.*, 06-174, pp. 4-5 (La.App. 3 Cir. 5/31/06), 931 So.2d 1244, 1247, *writ denied*, 06-1917 (La. 3/16/07), 952 So.2d 694, which also involved an aggravated rape conviction and imposition of a life sentence:

3

Louisiana Revised Statutes 15:537(A) requires that diminution of sentence be denied to all offenders who are convicted of or plead guilty to sex offenses, including aggravated rape and aggravated incest. Here, the trial court failed to deny the defendant diminution eligibility under La.R.S. 15:537(A) for both sentences imposed. In *State v. G.M.W., Jr.*, 05-391, p. 2 (La.App. 3 Cir. 11/2/05), 916 So.2d 460, 461, the court stated:

> We note that the second paragraph of La.R.S. 15:537 is clearly directed to the sentencing court, and the trial court's failure to include a denial of diminution of sentence thereunder renders Defendant's sentences illegally lenient. Pursuant to *State v. Williams*, 00-1725 (La.11/28/01), 800 So.2d 790 and La.Code Crim.P. art. 882, this court is authorized to recognize and correct illegally lenient sentences.

> Here, the trial court's failure to deny diminution of sentence renders the defendant's sentences illegally lenient. Therefore, we amend the defendant's sentences to reflect that diminution eligibility is denied pursuant to La.R.S. 15:537(A). We also instruct the trial court to make a notation in the minutes reflecting the amendment.

*Id*. at 1247.

Thus, the Defendants received illegally lenient sentences. Consequently, we amend the Defendants' sentences for aggravated rape to reflect that he and she are not eligible for diminution of sentence pursuant to La.R.S. 15:537, and we instruct the trial court to note the amendment in the court minutes.

## CUSKEY AND McANULTY ASSIGNMENT OF ERROR NO. 1

The Defendants allege the evidence was not sufficient to sustain their convictions for aggravated rape.

> In evaluating the sufficiency of the evidence to support a conviction, a reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984).

*State v. Draughn*, 05-1825, p. 7 (La. 1/17/07), 950 So.2d 583, 592.

4

The Defendants were charged with the aggravated rape of V.F. and V.S., both victims being under thirteen years of age at the time of the offenses. For the evidence to support a conviction for aggravated rape of a child under the age of thirteen, the State must prove: (1) anal, oral, or vaginal penetration deemed to be without consent of the victim because of (2) the victim's age at the time of the rape. La.R.S. 14:42. Louisiana Revised Statutes 14:41(C) defines oral sexual intercourse as:

> The intentional engaging in any of the following acts with another person:
>
> (1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender.
>
> (2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.

Cuskey testified that if he had done the things he was accused of he probably would not tell the jury. Cuskey testified that he was twenty-seven and he believed McAnulty was thirty-four. At the time the allegations of abuse arose, the two had been together for approximately one-and-a-half years.

Raven Cuskey, Cuskey's ten-year-old niece, testified she knew V.S. prior to the time the Defendants babysat her. Raven remembered being with McAnulty, V.F., and V.S. on a day that the group went to pick up Cuskey and her father from work. Raven testified that McAnulty did not give anyone marijuana and she never saw the Defendants with their clothes off. Raven further testified that she never saw the Defendants take V.F. or V.S. into the bedroom and close the door. Furthermore, she never saw a bad movie at the Defendants' home. Raven did testify that she saw a bad movie at V.S.'s home and she knew it was a bad movie because it had the "B word" in it. Raven later testified that the word was bitch and was written on the movie.

Raven testified that V.S. and V.F. were never alone with the Defendants and they never spent the night at the Defendants' home. However, Raven later testified

5

that she, V.F., and V.S. had spent the night together at the Defendants' home. Raven also testified that she knew that V.S. lied about things.

Rhonda Trachelle, who had been McAnulty's best friend since the age of eleven, testified that she and her two children lived with the Defendants from August to October of 2004. Trachelle testified there were no other children in the house during that time, including V.F., V.S., and Cuskey's nieces. Trachelle was aware the Defendants kept pornography in their bedroom and McAnulty did not let anyone in the room. Trachelle testified that she went out with V.S.'s mother once and the two used methamphetamine together.

ELEMENTS

The uncontradicted testimony of both V.S. and V.F. show that Cuskey engaged in oral sex with both girls. He also attempted vaginal intercourse with at least one of the two girls. The evidence supports the finding that there was oral sexual intercourse between Cuskey and V.F. and V.S. at the cemetery and between the Defendants and V.S. at the Defendants' home.

"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." La.R.S. 14:24. The testimony of both V.F. and V.S. indicates McAnulty told them to perform oral sex on Cuskey. Based on that testimony, we find that McAnulty knowingly participated in the execution of the crime of aggravated rape of V.F. and V.S. when she told them to put Cuskey's penis in their mouths. Accordingly, the evidence proved that McAnulty was a principal to the oral sexual intercourse between Cuskey and V.F. and V.S. at the cemetery.

6

At the time of trial, V.S. was twelve years old and V.F. was eleven years old. Accordingly, the State proved both victims were under the age of thirteen at the time of the offenses.

Based on this evidence, we find the State proved the elements of the offenses of aggravated rape as to both Defendants and both victims. However, the Defendants attack their convictions based on the credibility of the victims. Thus, we will now address the issues presented by the Defendants.

McANULTY

In brief to this court, McAnulty points out there was no physical evidence to support the allegations of V.S. and V.F. Although V.F. and V.S. testified about attempts at penetration with a dildo, V.S. was examined by Dr. Lord and no testimony that V.S. showed physical signs of such activity was given. Additionally, V.F. and V.S. testified they were exposed to and allowed to use drugs, but the State made no effort to have the girls tested in order to verify their stories.

McAnulty also points out that she and Cuskey denied all allegations made by V.F. and V.S. Additionally, both Raven and Camille testified that V.S. and V.F. were not truthful about the day of the incident at the cemetery. McAnulty then contends that V.F. and V.S. lied, giving the following examples of their failure to be truthful:

1) V.S. lied to several people about performing oral sex on V.F.

2) Hippler testified that V.F. admitted statements she made to V.S.'s sister about the abuse were not true.

McAnulty contends that at trial V.S. denied many of the stories she had previously related. The following examples were given:

1) V.S. told Detective Stanton that another girl named Mika was also abused. However, at trial, V.S. did not recall mentioning the girl and could not recall if she knew her.

7

2) V.F. told Dr. Lord she had been taught by her cousins to masturbate when she was six or seven. However, at trial, she denied that she had been taught this behavior.

3) V.S. reported that V.F. smoked ice at the cemetery. However, at trial, she did not recall telling anyone this happened. Additionally, V.F. never said she smoked ice.

McAnulty also contends that V.S. made statements that were not repeated at trial. The following examples were given:

1) V.S. told Dr. Lord the Defendants licked her chest and touched her behind.

2) V.S. told Dr. Simoneau Cuskey touched her while he was driving.

3) V.S. told Dr. Simoneau McAnulty put peanut butter on her vagina so the dog could lick it off, but there was no testimony the Defendants had a dog. Additionally, V.S. said McAnulty wanted her and V.F. to do this, but V.F. never mentioned this. Furthermore, V.S. did not mention this before or after her visit with Dr. Simoneau.

4) V.S. told Dr. Lord, Dr. Simoneau, and Hippler that the Defendants had sex on an island in a lake and told only Dr. Simoneau that the Defendants drove back naked.

McAnulty further complains about things V.S. first testified to at trial, including the following:

1) Prior to trial V.S. never told anyone McAnulty gave them pot to smoke on the day they went to the cemetery. However, she did tell Dr. Simoneau the Defendants made them smoke pot.

2) V.S. testified that at the cemetery McAnulty got out of the car to use the bathroom.

3) V.S. changed her story by saying that after Cuskey ejaculated, McAnutly wanted the girls to get in his lap and put his penis in their lap while clothed. V.S. claimed V.F. complied with this request. However, V.F. did not support this version of events.

4) V.S. never told anyone McAnulty wanted her and V.F. to use the dildos and that one was left in their bed.

5) V.S. and V.F. watched the Defendants have sex in their bedroom.

8

McAnulty also complains about things that could be considered as inconsistencies in V.S.'s story. The following are examples:

1) V.S. told Dr. Simoneau that Cuskey unzipped his pants and took his penis out at the cemetery. However, V.S. testified that she and V.F. took turns unzipping Cuskey's pants.

2) V.S. told Dr. Simoneau the Defendants smoked crystal at the cemetery and said they pulled out a bag and had a "pipe looking thingy" and lit something that produced a blue flame. At trial she stated McAnulty got something out of the trunk and put it in a bottle, which looked plastic. The Defendants then used a lighter with a "torch thing" and smoked whatever it was.

3) V.S. told Hippler Cuskey put a dildo in his mouth and in doing so used the phrase he could do a trick with it. At trial, V.S. stated McAnulty told her Cuskey could do a trick with one of the dildos.

McAnulty also points out that Dr. Simoneau relied on a statement by V.S. in which she described what it was like when Cuskey ejaculated. V.S. told Dr. Simoneau that white stuff came out of Cuskey's penis and it was like slime. McAnulty asserts Dr. Simoneau admitted that V.S.'s observations could have come from watching pornography.

McAnulty points out several things regarding V.F.'s testimony. The following could be considered inconsistencies in her testimony:

1) At one time, V.F. said Cuskey's nieces were only present at the Defendants' home one time, but at trial said they were there sometimes.

2) V.F. told Dr. Simoneau she and V.S. were made to touch themselves with a dildo, but at trial only related there was a dildo in the bed. However, prior to trial, she never mentioned there was a dildo in bed. McAnulty points out several statements by V.F. that were not repeated at trial, including the following:

1) She told Dr. Simoneau about overhearing a conversation about sex that she could not understand.

2) V.F. told Dr. Simoneau Cuskey touched her outside her clothes.

3) V.F. told Dr. Simoneau Cuskey touched V.S.'s chest under her clothes.

9

4) V.F. told Dr. Simoneau the Defendants touched her and asked if it felt good.

5) V.F. told Dr. Simoneau McAnulty called V.S. into the back room.

6) V.F. told Dr. Simoneau Cuskey tried to penetrate her vagina with his penis while they were at the cemetery.

McAnulty then points out statements by V.F. that were only made at trial, including the following:

1) V.F. testified that prior to going to the cemetery she, V.S., and McAnulty smoked marijuana.

2) V.F. testified that McAnulty asked V.F. to touch her breasts.

McAnulty also points out inconsistencies regarding the incident involving V.S. licking V.F.'s genitals. V.F. testified the incident happened before she and V.S. started going to the Defendants' home and was only able to say it occurred more than once. V.F. told Hippler the incident occurred on December 24, 2004, just over a week prior to her interview with Hippler. V.S. denied the incident happened on this date, while admitting that V.F. spent the night with her that night. V.S. also stated the incident occurred after the two met the Defendants.

The State was not required to put forth physical evidence of the attempted penetration with a dildo in order to support the convictions of aggravated rape in this case. All allegations that support the offenses charged relate to oral sexual conduct. Additionally, the State was not required to have V.F. and V.S. drug tested in order to prove they were credible. The Defendants could have attempted to have the victims drug tested, but chose not to do so.

The fact that V.S. and V.F. made allegations that were not repeated at trial and made certain allegations for the first time at trial does not make their statements and/or testimony more or less credible. Additionally, even if it did, that credibility determination was properly left to the jury.

10

All claims asserted by McAnulty, with the exception of two, do not relate to the acts of aggravated rape. First, V.S. told Dr. Simoneau that Cuskey unzipped his pants and took out his penis at the cemetery and at trial she stated she and V.F. took turns unzipping Cuskey's pants. V.S.'s testimony is inconsistent. Second, V.F. told Dr. Simoneau Cuskey attempted to penetrate her at the cemetery, but did not repeat that allegation at trial. Failure to repeat an allegation does not make the allegation false and would not amount to an inconsistency in V.F.'s testimony.

As to the claims regarding Dr. Simoneau, we note that Dr. Simoneau did testify that information describing semen as shaving cream or as white stuff that came out intermittently could be explained by exposure to pornography. However, he noted there was nothing that stood out that made him think the reports of V.F. and V.S. were "probably" not true. Additionally, Dr. Simoneau testified prior to V.S.; thus, he would not have been aware of her testimony and could not have given an evaluation of it at the time he testified. Dr. Simoneau also testified that he smiled when he heard one of the victims was asked what ejaculate tasted like and stated that it was a useless question unless you know what it tastes like.

This court discussed witness/victim testimony in *State v. Blake*, 03-1465 (La.App. 3 Cir. 5/5/04), 872 So.2d 602, 606-07 (footnotes omitted) as follows:

> A victim's testimony, alone, is sufficient to prove the elements of an offense. Regarding witness testimony, we acknowledged:
>
>> The trier of fact may accept or reject, in whole or in part, the testimony of any witness. The fact that the record contains evidence which conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. Thus, in the absence of internal contradictions or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient to support the requisite factual conclusion.

> This court further held:

11

Absent internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony is sufficient to support a defendant's conviction of a sex offense, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. Additionally, this court has affirmed convictions, where the defendant was convicted of a sex offense, based solely on minor victims' testimonies.

In *Blake*, this court noted that in *State v. Guidry*, 95-254, p. 3 (La.App. 3 Cir. 11/2/95), 664 So.2d 698, 699-700, the court held the following: "Although a victim's testimony is contradictory, it can support a conviction of sexual battery if it is clear with respect to the essential elements of sexual battery. *c.f. State v. Toups*, 546 So.2d 549 (La.App. 1 Cir.1989)." In *Blake*, this court went on to find the victims' testimony regarding the elements of sexual battery were consistent and any inconsistencies in their testimony merely related to their credibility. *Blake*, 872 So.2d at 607.

There may have been inconsistencies in the testimony of V.S. and V.F. However, those inconsistencies do not relate to the actual act of V.S. and V.F. placing Cuskey's penis in their mouths and V.S. licking the genitals of the Defendants while they had sex. Moreover, the assertion by the court in *Guidry*, 664 So.2d 698, should be applicable to all offenses and, in the case at bar, the victims' testimony regarding the elements of aggravated rape are consistent. Any inconsistencies in the victims' testimony merely relate to their credibility. *c.f. State v. Schexnaider*, 03-144 (La.App. 3 Cir. 6/4/03), 852 So.2d 450. Additionally, the jury verdicts indicate the jury chose to believe the testimony of V.S. and V.F. and found them to be more credible than the Defendants and the witnesses called by defense counsel. Those credibility determinations should not be second guessed by this court, as they are not clearly contrary to the record evidence.

For these reasons, McAnulty's convictions are affirmed.

12

CUSKEY

In brief to this court, Cuskey asks this court to review the credibility determinations made by the jury. He asserts the credibility determinations are clearly contrary to the record evidence, and his convictions should be reversed.

Cuskey points out there was no physical evidence to support the allegations of V.F. and V.S. V.S. reported that V.F. smoked ice and there was never any mention of V.F. smoking ice in the record. Neither V.S. or V.F. were drug tested. Additionally, at trial, V.S. denied that her cousins taught her to masturbate although she had previously reported this.

Cuskey also discusses the testimony of Dr. Simoneau, who Cuskey alleges testified that he found it strange that V.F. still liked the Defendants after making these allegations. Cuskey further points out that V.F. told Dr. Simoneau Cuskey attempted to vaginally penetrate her at the cemetery, but this was not mentioned by V.S. and was not mentioned to anyone else. Cuskey then mentions the allegation V.S. made about putting peanut butter on her vagina and having a dog lick it off. Cuskey notes this incident was not mentioned by V.S. to anyone other than Dr. Simoneau and was not repeated by V.S. at trial. Cuskey additionally points out there was no evidence that he or McAnulty owned a dog.

Cuskey points out that V.S. denied the allegations that she performed oral sex on V.F., but later admitted to it. V.F. stated that the incident occurred after she met the Defendants, and V.S. testified that it occurred before they met the Defendants.

Cuskey then discusses the testimony of Detective Stanton and his doubts about V.F. and V.S. and his opinion that they were being less than truthful.

13

We note that Cuskey asserts Dr. Simoneau testified that V.F.'s continued liking of the Defendants was strange. In fact, Dr. Simoneau testified this was something he typically saw in sexual abuse cases.

For the reason stated with regard to McAnulty, Cuskey's convictions are affirmed.

**CUSKEY ASSIGNMENT OF ERROR NO. 2 & McANULTY ASSIGNMENT OF ERROR NO. 4:**

In his second assignment of error, Cuskey contends the trial court erred in imposing consecutive life sentences. In her fourth assignment of error, McAnulty contends the trial court failed to sufficiently articulate a basis for the imposition of the consecutive mandatory life sentences in this case and the sentences imposed are constitutionally excessive considering the facts and circumstances of this case.

The record does not indicate the Defendants filed a motion to reconsider sentence, nor does the record indicate the Defendants orally objected to their sentences at the sentencing hearings. According to La.Code Crim.P. art. 881.1, failure to make or file a motion to reconsider sentence precludes a defendant from raising on appeal any objection to the sentence. When the record does not indicate that any objection was made regarding sentencing, a defendant is precluded from appealing his sentence. *State v. Williams*, 01-998 (La.App. 3 Cir. 2/6/02), 815 So.2d 908, *writ denied*, 02-578 (La. 1/31/03), 836 So.2d 59.

Thus, the Defendants' sentencing claims are barred pursuant to La.Code Crim.P. art. 881.1.

**McANULTY ASSIGNMENT OF ERROR NO. 2**

In her second assignment of error, McAnulty contends the trial court erred in refusing to allow trial counsel to respond to the remarks made by prospective juror Elizabeth McLendon prior to the commencement of trial.

14

This issue was not briefed and, therefore, this assignment of error is considered abandoned. Uniform Rules—Courts of Appeal, Rule 2-12.4.

## McANULTY ASSIGNMENT OF ERROR NO. 3

In her third assignment of error, McAnulty contends the trial court erred in denying the Motion for Severance in this matter.

This issue was not briefed and, therefore, this assignment of error is considered abandoned. Uniform Rules—Courts of Appeal, Rule 2-12.4.

## DECREE

The Defendants' convictions and sentences are affirmed. We amend the Defendants' sentences to reflect that they are not eligible for diminution of sentence pursuant to La.R.S. 15:537 and instruct the trial court to note the amendments in the minutes of court. In all other respects, the Defendants' sentences are affirmed.

**AFFIRMED AS AMENDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.