# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**22-730**


**STATE OF LOUISIANA**

**VERSUS**

**AUSTIN WILLIAM BOST**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 352,327
HONORABLE MARY LAUVE DOGGETT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**GARY J. ORTEGO**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sharon Darville Wilson, Gary J. Ortego, and Wilbur L. Stiles, Judges.


**CONVICTIONS AND SENTENCES ARE AFFIRMED, IN PART, AND VACATED, IN PART; CASE REMANDED WITH INSTRUCTIONS.**

**J. Phillip Terrell, Jr.**
**District Attorney**
**Kelvin G. Sanders**
**Assistant District Attorney**
**Ninth Judicial District**
**P. O. Box 7538**
**Alexandria, LA 71306-7358**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
      **State of Louisiana**

**Chad M. Ikerd**
**Attorney at Law**
**Louisiana Appellate Project**
**P. O. Box 2125**
**Lafayette, LA 70502**
**(337) 366-8994**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Austin William Bost**

**ORTEGO, Judge.**

Defendant, Austin William Bost, appeals his convictions of three counts of indecent behavior with a juvenile under the age of thirteen, violations of La.R.S. 14:81; three counts of sexual battery of a victim under the age of thirteen, violations of La.R.S. 14:43.1; three counts of oral sexual battery of a victim under the age of thirteen, violations of La.R.S. 14:43.3; and three counts of aggravated crime against nature with a child under the age of thirteen, violations of La.R.S. 14:89.1. For the following reasons, we affirm in part, vacate in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

On June 22, 2021, Defendant, Austin William Bost, was charged by bill of information with three counts of indecent behavior with a juvenile under the age of thirteen, violations of La.R.S. 14:81; three counts of sexual battery of a juvenile under the age of thirteen, violations of La.R.S. 14:43.1; three counts of oral sexual battery of a victim under the age of fifteen, violations of La.R.S. 14:43.3; and three counts of aggravated crime against nature with a child under the age of thirteen, violations of La.R.S. 14:89.1. All twelve counts of alleged sexual misconduct involved Defendant's four-year-old daughter, A.D. After a two-day jury trial, on July 13, 2022, a unanimous jury found Defendant guilty of all counts. On August 18, 2022, the trial court sentenced Defendant as follows:

> **Indecent behavior with a juvenile under the age of thirteen (3 COUNTS)** – EACH COUNT – twenty years at hard labor without benefit of probation, parole, or suspension of sentence.
>
> **Sexual battery of a child under the age of thirteen (3 COUNTS)** – EACH COUNT – forty years at hard labor without benefit of probation, parole, or suspension of sentence. Also designated as a crime of violence.
>
> **Oral sexual battery of a child under the age of thirteen (3 COUNTS)** – EACH COUNT – sixty years at hard labor without benefit of probation, parole, or suspension of sentence.

**Aggravated crime against nature with a child under the age of thirteen (3 COUNTS)** – EACH COUNT – sixty years at hard labor without benefit of probation, parole, or suspension of sentence.

The trial court ordered all sentences to run concurrently with each other. On August 26, 2022, the trial court granted Defendant's motion for appeal.

## ISSUES

On appeal, Defendant asserts five assignments of error:

1. The State failed to sufficiently prove that Austin Bost was guilty as charged.

2. Convictions for three counts of aggravated crimes against nature, which used as an essential element of the crime the same act or occurrence that was alleged in counts 1 – 9 constitute double jeopardy. Alternatively, trial counsel was ineffective for not objecting to this issue in the trial court.

3. The trial court erred in allowing the SANE nurse to testify to second- and third-hand hearsay about alleged sexual abuse of A.D. The statements were not admissible [under] La. Code Evid. art. 803(4).

4. The 60-year sentences on counts 7 – 9, Oral Sexual Battery, and counts 10 – 12, Aggravated Crimes Against Nature, are constitutionally excessive.

5. Trial counsel was ineffective for failing to file a motion to reconsider sentence. The trial court based a significant part of its decision to impose *de facto* life sentences on evidence of acts allegedly committed by Austin Bost when he was a child.

## ERRORS PATENT

In accordance with La.Code Crim. P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there are no errors patent. However, this court does note a conflict between the minutes of Defendant's sentencing and the transcript of the sentencing. Although the minutes state the name of each offense three times, indicating three convictions for each set of offenses, the minutes indicate that a single sentence was pronounced for each set of convictions. The transcript of the sentencing shows the trial court specified that the sentence it pronounced applied to "each count" of indecent

2

behavior with a juvenile, "each count" of sexual battery, "each count" of oral sexual battery, and "each count" of aggravated crimes against nature.

"[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied,* 00-2051 (La. 9/21/01), 797 So.2d 62.

Therefore, the minutes of sentencing shall be corrected to clearly reflect that the trial court imposed a sentence on each count. Accordingly, this court remands this matter and orders the trial court to correct the minutes of sentencing to accurately reflect that the trial court imposed the sentences on "each count."

Additionally, we note that according to the sentencing transcript, defense counsel asked the trial court to recommend Defendant for work release. The trial court responded, "Um, I don't know that that's available on this sentence, but I'm not gonna object to anything that the Department of Corrections finds, um, appropriate." However, the minutes state that the sentences were "subject to work release."

Therefore, this court further orders that upon remand the sentencing minutes be amended to delete the statement "subject to work release" and to accurately reflect the trial court's statement that it did not know if work release was available on these sentences, but that it will not object to anything that the Department of Corrections finds appropriate, per the sentencing transcript.

## LAW AND ANALYSIS

### *Elements of Each Offense*

Defendant was convicted of three counts each of (1) indecent behavior with a juvenile under the age of thirteen; (2) sexual battery of a child under the age of thirteen; (3) oral sexual battery of a child under the age of thirteen; and (4) aggravated crime against nature with a child under the age of thirteen. At the time

3

the offenses were committed, on or about October 29, 2020, the definition for each offense was as follows:

**Indecent behavior with juveniles**, a violation of La.R.S. 14:81, provides, in pertinent part:

A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:

(1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child's age shall not be a defense[.]

**Sexual battery**, a violation of La.R.S. 14:43.1, provides, in pertinent part:

A. Sexual battery is the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, directly or through clothing, when any of the following occur:

(1) The offender acts without the consent of the victim.

(2) The victim has not yet attained fifteen years of age and is at least three years younger than the offender.

. . .

B. Lack of knowledge of the victim's age shall not be a defense. However, normal medical treatment or normal sanitary care shall not be construed as an offense under the provisions of this Section.

**Oral sexual battery**, a violation of La.R.S. 14:43.3, provides, in pertinent part:

A. Oral sexual battery is the intentional touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender, or the touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim, when any of the following occur:

(1) The victim, who is not the spouse of the offender, is under the age of fifteen years and is at least three years younger than the offender.

4

. . . .

(B) Lack of knowledge of the victim's age shall not be a defense.

And, finally, **aggravated crime against nature**, a violation of La.R.S. 14:89.1, provides, in pertinent part:

A. Aggravated crime against nature is either of the following:

(1) An act defined by R.S. 14:89(A)(1) committed under any one or more of the following circumstances:

. . . .

(f) When the victim is under the age of seventeen years and the offender is at least three years older than the victim.

(2)(a) The engaging in any prohibited act enumerated in Subparagraph (b) of this Paragraph with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.

(b) The following are prohibited acts under this Paragraph:

(i) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile or a person with a physical or mental disability, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.

(ii) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.

(c) Consent shall not be a defense to prosecution for a violation of the provisions of this Paragraph.

*Evidence Adduced at Trial*

These offenses are primarily fact driven. Therefore, our review of the factual evidence presented and accepted by the trial court, although extensive, laborious, and sometimes repetitive in this opinion, is vital for a thorough and complete analysis of the complex and interwoven issues presented in this appeal.

The first witness to testify for the State at trial was Detective Tamico Paulk (Detective Paulk), of the Rapides Parish Sheriff's Office. Detective Paulk began investigating the instant case when she received a call that the victim was at Cabrini Hospital. After speaking with the victim's mother and the Sexual Assault Nurse Examiner (SANE) at the hospital on October 30, 2020, Detective Paulk called the Child Advocacy Center (CAC) to set up an interview that same evening. Detective Paulk supervised the interview of the victim by Ms. Kristin Sauce (Kristin), with CAC.

The victim's interview was recorded and played for the jury, without objection by Defendant. A transcript of the interview was also identified by Detective Paulk and introduced into evidence, along with the video. Notably, the State timely notified the defense that the victim was available for cross-examination, but the defense failed to request to cross-examine the victim.

A review of the CAC interview of the victim and a reading of the transcript shows that during the interview, the victim stated that she was four years old. The victim stated that her mother and "Chris," her mother's friend, brought her to the interview. The victim said her mother's name was Lorie.

The victim remembered that she saw a Ms. Thomas, a forensic nurse, who checked her "noonie". When asked by the interviewer what her "noonie" was, the victim replied, "Uh, it's red because Austin's been touching me." When asked who Austin was, the victim replied, "Um, that's, that's my daddy." The interviewer then asked the victim where her "noonie" was, and the victim stated, "Uh, it's over here. It's down here." Although the victim's arm was not fully visible, it appears the victim pointed downward when indicating where her "noonie" was located.

When the interviewer asked the victim to tell her about Defendant touching her "noonie", the victim answered, "So he had been touching me all day and just do everything to me (inaudible)." The victim said that they were at Defendant's house. The victim also told the interviewer that Defendant touched her "noonie" with his "little balls" and that "he had said I got to touch his balls real quick." The victim further told the interviewer that Defendant told her "to put his balls in [her] mouth", and when she did, it tasted "watery."

The victim also told the interviewer that she was worried about how her daddy was acting and worried about her granny. When asked about the sleeping arrangements at Defendant's house, the victim told the interviewer that she slept on the floor; that no one but her daddy slept in the room with her; and that her daddy did not sleep with her.

The victim then identified certain body parts on a drawing of a girl, which she called a "noonie" and "titties[.]"[1] The victim also identified what she called "balls" on a drawing of a boy.

The interviewer asked the victim if Defendant touched her with anything besides his balls, to which she responded, "He put it right there," pointing to her mouth. The victim then identified the legs, hands, and feet on the drawing. When asked if Defendant used any of these other body parts to touch her, the victim nodded her head and gestured toward the drawing. After the victim identified one of the body parts on the drawing as a "butt," the interviewer asked if Defendant ever did "anything with his butt[.]" The victim nodded her head and stated, "Uh, put in my butt."

---

[1] The video shows the victim identifying parts on a piece of paper, but one cannot see the specific parts she identified.

When asked by the interviewer if Defendant uses his finger to touch her "right there," gesturing to the drawing, the victim replied, "So watch, see (gestures), it's on her. See her, her daddy's on her." While stating this, this victim put one of the pieces of paper on top of the other piece of paper. The interviewer then asked the victim if that is what her daddy does to her, to which the victim responded, "No, no, which one. I see (inaudible). He still on her. See his balls are on her noonie."

The victim also told the interviewer that Defendant "put his balls on [her] feet." The following colloquy then took place:

Kristin: What happened after daddy put his balls on your feet?

[A.D.]: Uh, like that's. He made me lay down like this (gestures) like (inaudible) like this. [The victim laid on the seat of the chair with her legs toward the back of the chair and with her legs in the air.]

Kristin: He made you lay down like that?

[A.D.]: Yeah.

Kristin: What happened after that?

[A.D.]: And he toucheded [sic] my noonie.

. . . .

Kristin: What happened after daddy put his balls on your feet?

[A.D.]: Uh, no, no squirt this thing on here and, and I'm gonna talk to you.

Kristin: Okay, what happened after daddy put his balls on your feet?

[A.D.]: Uh, he uh here, here use a napkin.

Kristin: Thank you.

[A.D.]: So he had put his ball on my, on my noonie.

Kristin: Mm-hmmm.

[A.D.]: And he uh put it on my, uh on my noonie.

Kristin: Put it in your noonie?

8

[A.D.]:        Hey but, do but do some more.

Kristin:       Did you ever see anything come out of his balls?

[A.D.]:        Yeah, yeah it was watery.
               . . . .

Kristin:       Did any of the water stuff that came out of his balls touch
               you?

[A.D.]:        Yeah, watch it …

Kristin:       Where did it touch you at?

[A.D.]:        Look (gestures to paper), watch. No this is girl one and
               this is of the boy so watch.

Kristin:       Okay.

The victim talked about "his balls" being on the picture and apparently told the interviewer to "squeeze it." The victim then said "it" would not come out of the picture. When the interviewer asked, "You said watery stuff came out of daddy's balls?[,]" the victim answered affirmatively. The interviewer then asked "where did it go whenever it got on you?[,]" to which the victim responded, "It gonna be on the noonie."

The interviewer asked the victim who "grammy" was, and the victim stated that "grammy" was her "mom's mom."[2] When the interviewer asked the victim if she was at Defendant's house or grammy's house when she was lying on the chair, as she had previously demonstrated, the victim stated she was at "grammy's house."

The interviewer and the victim then moved to a large drawing board on the wall. The interviewer asked the victim if Defendant's clothes were on or off "[w]hen the white stuff came out of [his] balls." In response, the victim drew on the board, stating, "Watch, watch when I draw his balls (draws on white board). This is stuff

_____

[2] The record otherwise indicates that the victim refers to Defendant's mother as "grammy."

9

he came out. See it's coming out." The victim then grabbed the male anatomical drawing, held it up to the drawing pad, and drew on it. While stating that she was going to draw his balls, the victim colored on the penis region of the drawing. As the victim said, "[s]ee it's coming out," she pointed to the area she colored on the penis region.

The next witness, Kimberly Thomas (Ms. Thomas), the Forensic Nurse Examiner, testified that she collects evidence from patients who have been abused or neglected. She is also called a "SANE" nurse, which stands for Sexual Assault Nurse Examiner. After being questioned by both the State and the defense as to her qualifications, Ms. Thomas was accepted as an expert in Sexual Assault Nurse Examinations.

Ms. Thomas examined the victim on October 30, 2020, at Saint Frances Cabrini Hospital. According to Ms. Thomas, the victim's "current complaint was redness and itching to her noonie or her vaginal area." When asked what was relayed to her regarding an assault, Ms. Thomas testified that she always speaks to an adult prior to her examination of the victim. Thus, Ms. Thomas spoke to the victim's mother, Lorie Durison (Ms. Durison), without the victim present. This court notes that at this point during Ms. Thomas' testimony, defense counsel objected to her testimony as hearsay because Ms. Thomas was testifying as to information she received from the victim's mother and grandmother. The trial court found the testimony qualified as an exception to the hearsay rule because it was "historical testimony for the purposes of medical treatment," and therefore admissible. This issue of whether Ms. Thomas should have been allowed to testify to this information will be addressed later under assignment of error number three.

When asked what was relayed to her concerning the assault, Ms. Thomas testified that Ms. Durison stated to her that the victim told her grandmother, Rebecca Durison, that the victim's "noonie" was red and that it burned and itched. Ms. Thomas was also told that the victim's daddy made her put his balls in her mouth and made her move her feet back and forth on his penis. Ms. Durison believed that ejaculation took place and the victim's feet were wiped on a sheet.

After Ms. Thomas spoke with Ms. Durison, she met with the victim. When Ms. Thomas asked the victim if she knew why she was there that day, the victim "said Austin is always touching me with his balls and stuff and puts them in my mouth." When asked who "Austin" was, the victim responded, "that's my father, my daddy. I call him Austin sometimes." The victim then told Ms. Thomas that Defendant makes her "hold his balls." Ms. Thomas asked the victim to clarify "what are his balls," and the victim pointed between her legs "and says that part."

Ms. Thomas further testified to the following:

> I asked her when does he make you hold his balls and she said all the time. I asked can you tell me more about that and she said he makes me put his stuff in my feet and at this point she leaned back in the bed, put her feet up in the air and moved them backwards and forwards.

Ms. Thomas then examined the victim, which revealed "some redness in her vagina and some tenderness with palpation." She noted that the hymen shape was normal for a four-year-old child. When questioned by defense counsel, Ms. Thomas admitted that the redness noted on the victim's vagina could have come from soiled undergarments that needed to be changed. Ms. Thomas testified that there was no indication of sexual penetration.

Tori Bost (Tori), Defendant's younger sister, testified at trial as to the alleged incidents with the victim. Tori testified that when she was babysitting the victim, the victim told her that "Austin" made her touch him and did horrible things to her,

including putting his penis in her mouth. When asked to clarify if the victim meant Defendant when she said "Austin" made her do these things, Tori testified that the victim "just said Austin. She didn't say daddy." Tori testified that she didn't think her brother, Defendant, "would do anything like that". When questioned by the State, however, Tori admitted that when she and Defendant "were kids he just, he touched me, but I [sic] was a long time ago, and we were just kids."

Defendant's mother, Kelli Dufrane (Ms. Dufrane), was called to testify for the defense. Defendant lived with Ms. Dufrane most of his life; therefore, the victim stayed at her house "[a] lot." Ms. Dufrane testified that the victim referred to Defendant as "Daddy"; however, she admitted she was aware that there were times that the victim's mother tried to get the victim to call Defendant "Austin." Regarding whether the victim had ever told her that Defendant had been inappropriately touching her, Ms. Dufrane responded that the victim "gave us several people's names" and "told us that Austin at Mommy's house had done some stuff." When referring to "Austin at Mommy's house," Ms. Dufrane appears to be referencing one of Ms. Dusiron's boyfriends who was also named Austin.

Defendant, Austin William Bost, then testified in his own defense. Defendant testified that he is the victim's father. He denied ever doing anything improper with the victim or ever exposing himself to her. Defendant further denied ever having the victim touch his genitals through his clothing or ever touching the victim inappropriately. Defendant testified that he had been trying to get custody of the victim for quite some time but did not have a steady job and learned that a DNA test would be costly.

Defendant was questioned about a video he made, explaining that he happened to be videotaping when the victim started telling him "some things." Defendant estimated that the video was taken in 2019 when the victim was about

12

two or two and half years old. The video was played for the jury. In the video, the victim stated that someone took his pants off in front of her. It sounds like the victim names two people – Hollie and Austin – who took their pants off. Defendant testified that he did not think much of the video at the time he made it, but now "everything's starting to make sense."

Defendant testified that when the victim stayed with him, she would sometimes sleep with him, while at other times she would sleep with Defendant's mother or on her own.

Regarding the Department of Child and Family Services' investigation, Defendant testified that "this" was the only complaint that had been brought against him, but the victim's mother, Ms. Durison, had a complaint regarding drugs. When defense counsel asked Defendant if he did any drugs, Defendant said he "did pain pills" and "smoked a little bit of weed." Defendant claimed his "drug addiction never really got out of control."

## ASSIGNMENT OF ERROR NO. 1:

In assignment of error number one, Defendant contends that the State failed to sufficiently prove he committed the offenses as charged. Defendant claims the evidence was insufficient to prove he was the perpetrator of the offenses and, alternatively, was insufficient to prove twelve different sexual acts.

*Standard of Review*

In reviewing the sufficiency of evidence, this court has set forth the standard of review as follows:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel.*

13

> *Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La. 1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See Graffagnino*, 436 So.2d at 563, *citing State v. Richardson*, 425 So.2d 1228 (La.1983). To obtain a conviction, the elements of the crime must be proven beyond a reasonable doubt.

*State v. Thacker*, 13-516, p. 5 (La.App. 3 Cir. 1/28/15), 157 So.3d 798, 804 (quoting *State v. Freeman*, 01-997, pp. 2-3 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 580).

<u>*Defendant's Argument in Brief*</u>

Claiming there was no physical evidence of rape or sexual abuse, Defendant contends there was insufficient evidence that any sexual offense occurred in this case. "Even the 'redness' seen on A.D.'s private area could have come from an innocuous source." Defendant points to Ms. Thomas' (the SANE nurse's) testimony that the redness on the victim's vagina could have come from a heat source, such as a diaper. Additionally, Defendant asserts, "[t]here was no third-party witness who confirmed any allegation was true. Only second and third-hand hearsay reiterated the witness' interpretation of what A.D. meant." As for the victim's allegation that Defendant "changed her", Defendant contends that as the father of a four-year-old, it was not inappropriate for him to change his daughter when she had an occasional accident, nor was there any description of what "touching" meant.

Defendant cites his own testimony in support of his claim that the incident in question was investigated by DCFS and found to be untruthful. Both Defendant's mother and sister testified that the DCFS case had been closed. As for the reason for the closure, Ms. Dufrane testified she was told "[l]ack of evidence." Defendant's sister testified that she did not believe Defendant was guilty, even though she was the first person to whom the victim reported the incident in question.

14

Defendant also argues that one of the many males that visited the victim's mother could have been the perpetrator since the victim called many of them "daddy" and since one of them was named "Austin." Defendant refers to the video he took of the victim a year before the victim's allegations, in which he claims the victim said that another "Austin" told her to pull her pants down. According to Defendant, the "Austin in question is believed to be a 'friend' of A.D.'s mother, Austin Ingo."

While acknowledging that he was charged with twelve sexual offenses in the bill of information, Defendant contends "[t]here is no proof of twelve different alleged sexual acts between Austin and A.D." In support, Defendant argues that the State's own witness, Detective Paulk, admitted that except for the October 29, 2020 incident, the number of other incidents could not be determined, and that she simply estimated based on the times the victim was alone with Defendant.

Defendant asserts that even the jury was confused by the number of charges. The record shows that after the jury retired for deliberations, the jury sent a note to the trial court asking, "why three counts each?" The trial court responded:

> And so there's no real answer to that question. The, um, the State prosecutes cases. They choose what to bill, what to bring to trial, and it's just y'all's job to go through each count and determine your verdict.

The next time the jury returned to the courtroom, it returned a verdict of guilty as to all twelve counts.[3]

---

[3] The jury's inquiry is indicative of the lack of specificity in the State's presentation of the evidence in relation to the twelve charges. The bench conference between the trial court and counsel in shaping the trial court's response to the question illustrates the lack of delineation as follows:

> BY THE COURT:
>
> Okay. I'm gonna read … the new question. It says why the three counts each? … Count One through Three, Count Four through Six, Count Seven through Nine, Count Ten through Twelve. I mean, we can't answer that. It's just the way the case was billed.

BY MR. SANDERS [for the State]:

Yeah, that's, that's - - the State billed it as he was arrested.


BY THE COURT:

Right.

BY MR. SANDERS:

Exactly as he was arrested.

BY MR. TALLEY [Defense Counsel]:

Judge, we did address that with testimony from Detective Paulk, who was asked specifically why is it three counts, and she could only recount the one instance.

BY THE COURT:

Um, well, but I'm not gonna examine the testimony for them. I - - why the three counts, because that's what the State chose to bill. I mean.


BY MR. TALLEY:

I understand by the testimony … from Detective Paulk was … she was asked specifically about the three counts (interrupted)

BY THE COURT:

I remember that. I mean, that's for the jury to determine. It's - - they just want to know why [are] there three counts and (interrupted)

. . . .

BY THE COURT:

-- because the State billed three counts. That's (interrupted)

BY MR. SANDERS:

- - and of, of course, we subsequently changed the way we bill cases.

16

The State counters by pointing out the testimony introduced at trial; the victim's CAC interview, in which the victim "provided graphic details of the sex acts that the defendant either performed on her or she performed on him"; Tori Bost's testimony that the victim told her Defendant made her "touch his balls" and demonstrated how Defendant made her "jack off his penis with her feet"; and Defendant's own testimony that he was alone with the victim for extended periods and provided personal care to the victim, including bathing.

The State argues, "Discretion in determinations of credibility is vested in the jury, which may accept or reject testimony within the bounds of rationality." The State concludes:

> The jury decided to accept the video testimony of A.D., the trial testimony of Tori Bost and reject the trial testimony of defendant. Viewing the evidence in the light most favorable to the prosecution the jury could and did find that the essential elements of the crime had been proven beyond a reasonable doubt.

———————————

BY THE COURT:

> Right.

BY MR. SANDERS:

> That predated our change so - -

BY THE COURT:

> So, um, I guess we have to bring them back in here but that's gonna be my answer. The State chooses to bill what they want to prosecute and it's up to you to, to find a verdict on each count that they billed. That's all I can say. It's gonna be a long night.

*Analysis*

*Defendant's Identification as Perpetrator*

Defendant argues that the evidence was insufficient to prove his identity as the perpetrator. The standard of review in a case of identification is well established:

> "In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). . . . [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville*, 448 So.2d 676, 678 (La.1984). Furthermore, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. *State v. Weary*, 03-3067 (La. 4/24/06), 931 So.2d 297; *State v. Neal*, 00-0674 (La. 6/29/01), 796 So.2d 649. Positive identification by only one witness is sufficient to support a conviction. *Weary*, 03-3067 at p. 18, 931 So.2d at 311; *Neal*, 00-0674 at p. 11, 796 So.2d at 658; *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988). It is the factfinder who weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations. *State v. Bright*, 98-0398, p. 22 (La. 4/11/00), 776 So.2d 1134, 1147.

*State v. Hughes*, 05-992, pp. 5-6 (La. 11/29/06), 943 So.2d 1047, 1051 (alteration in original).

In this case, the victim told the CAC interviewer that the Austin who had been touching her was her "daddy." Defendant's mother, Ms. Dufrane, testified that Defendant had lived with her most of his life and that the victim stayed at her house often. In fact, when the CAC interviewer asked the victim where she was when one of the incidents occurred, the victim said she was at "grammy's house." Detective Paulk clarified in her testimony that Ms. Dufrane, Defendant's mother, was called "Grammy." Finally, the victim told the CAC interviewer that her daddy had been taking a bath with her and stated that that was how he was touching her.

Although another "Austin" was mentioned by the victim in the 2019 cellphone video, there was no testimony regarding whether this other "Austin" was still visiting the victim's mother at the time the instant allegations were made. Additionally, the evidence shows the victim was complaining about redness and itching to the SANE nurse at the time the allegations were made on October 30, 2020. Thus, it was reasonable for the jury to conclude that the incidents described by the victim occurred near the time of the allegations.

Additionally, in the cellphone video taken by Defendant, the victim identified the "Austin" she was talking about as a person at her "mommy's" house. During her CAC interview, the victim stated that the incidents she described occurred at Austin's house and her grammy's house. The victim did not state that any of the incidents occurred at her mother's house. Thus, we find that it was reasonable for the jury to reject Defendant's theory that the victim was referring to another Austin when she described the things that "daddy" did to her at Austin's and grammy's house. The jury, as the trier of fact, heard all of this conflicting evidence, including the testimonies of both Defendant and Defendant's mother that the victim called lots of people "daddy."

We find that the evidence was sufficient to prove the Defendant's identity as the perpetrator of the incidents described by the victim. Therefore, the jury's determination that Defendant was the perpetrator of the victim's allegations was a reasonable determination and shall not be overturned.

*Lack of Physical Evidence*

Defendant also claims that the evidence was insufficient due to the lack of physical evidence of a sexual assault.

First, there was in fact some physical evidence of a sexual assault. The SANE nurse observed "some redness in [the victim's] vagina and tenderness with palpation."

19

Second, it is well-settled that physical evidence is not necessary for a finding of sufficient evidence. This court explained in *State v. Pennywell*, 13-1376, pp. 12-13 (La.App. 3 Cir. 5/7/14), 139 So.3d 587, 595 (citations omitted):

> The jurors were free to reject or accept, in whole, or in part, the testimony of the victim. Furthermore, the testimony of the victim alone can support a verdict of guilty of a sexual offense even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense.

Likewise, in *State v. Seaton*, 47,741, pp. 12-13 (La.App. 2 Cir. 4/10/13), 112 So.3d 1011, 1018-19 (internal citations omitted), *writ denied*, 13-1056 (La. 11/15/13), 125 So.3d 1102, the second circuit explained:

> In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. This is equally applicable to the testimony of victims of sexual assault. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant.

We therefore find that the alleged lack of physical evidence in this case does not cause the evidence to be insufficient. Thus, this claim is without merit.

*Summary of Victim's Allegations*

The victim's CAC interview was admitted into evidence at trial without objection. The victim told the interviewer that her "noonie" was red because "Austin" had been touching her. The victim identified "Austin" as her "daddy" and identified her "noonie" by pointing downward and stating, "[i]t's down there." The victim also told the CAC interviewer that Defendant made her touch his "balls" and made her put his "balls" in her mouth. Later in the interview, the victim said Defendant put his "balls" in her "butt." Apparently demonstrating how Defendant put his "balls" on her "noonie," the victim placed one anatomical drawing on top of another anatomical drawing.

When asked if anything came out of Defendant's "balls," the victim said "watery stuff" came out of Defendant's "balls" and got on her "noonie." Defendant's sister, Tori, also testified that the victim told her "Austin" made her touch his "balls." The victim told the SANE nurse that "Austin" always touched her with his "balls," put his "balls" in her mouth, and made her hold his "balls." When the SANE nurse asked the victim who "Austin" was, the victim said he was her daddy. Notably, the victim described to the SANE nurse, the CAC interviewer, and Tori a specific act Defendant made her perform – rubbing his "balls"/penis/ "stuff" with the victim's feet. Specifically, during the CAC interview, the victim told the interviewer that Defendant "put his balls on [her] feet" and demonstrated by laying backwards in the chair with her feet in the air.

Based on the victim's identification of the perpetrator as her "daddy," we find that there was sufficient evidence for the jury to reasonably find that Defendant committed the offenses charged. Notably, the "narrow compass" of a review of sufficiency of the evidence does not permit "a reviewing court to second guess the rational credibility 'determination", of the fact finder at trial." *State v. Marshall*, 04-3139, p. 5 (La. 11/29/06), 943 So.2d 362, 367, *cert. denied*, 552 U.S. 905, 128 S.Ct. 239 (2007).

Thus, based upon all of the testimony and evidence in the record, we find that the victim's allegations set forth five basic separate acts:

1. Defendant touching the victim's "noonie" with either his hands or his balls.

2. The victim touching Defendant's "balls."

3. Defendant putting his "balls" in/on the victim's "butt."

4. Defendant putting his "balls" in the victim's mouth.

5. The victim rubbing Defendant's "balls"/penis/"stuff" with her feet.

Additionally, because the victim was four years old at the time of the CAC interview and Defendant was twenty-five years old at the time of the incidents, the age requirements of each offense were satisfied.

We now turn to consideration of each offense and whether the jury could have reasonably found that the evidence was sufficient to support each individual offense charged. Mindful that an appellate court reviews evidence in the light most favorable to the prosecution on assessment of the sufficiency of evidence, we begin consideration of the more egregious charges and convictions. *See, e.g., Jackson*, 99 S.Ct. 2781.[4]

*Aggravated Crime Against Nature, Counts 10 – 12*

As referenced above, La.R.S. 14:89.1 defines an aggravated crime against nature as follows:

> A.    Aggravated crime against nature is either of the following:
> (1) An act defined by R.S. 14:89(A)(1) committed under any one or more of the following circumstances:
>
> . . . .
>
> (f) When the victim is under the age of seventeen years and the offender is at least three years older than the victim.
>
> (2)(a) The engaging in any prohibited act enumerated in Subparagraph (b) of this Paragraph with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
>
> (b) The following are prohibited acts under this Paragraph:
>
> (i) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with

---

[4] The foundational consideration of the more severely punishable conviction is reflected below in discussion of Defendant's double jeopardy claim. *See State v. Grace*, 10-1222, pp. 14-15 (La.App. 3 Cir. 4/6/11), 61 So.3d 812, 823 ("The remedy for a double jeopardy violation for multiple punishments for the same offense is to vacate the conviction and sentence for the less severely punishable offense and affirm the conviction and sentence for the more severely punishable offense."), *writ denied*, 11-961 (La. 10/21/11), 73 So.3d 382.

juveniles, pornography involving juveniles, molestation of a juvenile or a person with a physical or mental disability, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.

(ii) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.

(c) Consent shall not be a defense to prosecution for a violation of the provisions of this Paragraph.

"The word 'lewd' means lustful, indecent, lascivious, and signifies that form of immorality which has relation to sexual impurity or incontinence carried out in a wanton manner." *State v. Prejean*, 216 La. 1072, 1078, 45 So.2d 627, 629 (1950).

After reading the record and considering the evidence in the light most favorable to the State, we find that the first separate act listed above, Defendant touching the victim's "noonie" with either his hands or his genitalia, meets the definition of a prohibited act as defined in La.R.S. 14:89.1(A)(2)(a), and therefore supports the conviction of one count of aggravated crime against nature. Defendant testified that he is the victim's father. The victim told the CAC interviewer that the person who committed the sexual acts on her was her "daddy." As evidenced by the record, the victim was only four years old when this act was committed.

The second separate act listed above, the victim touching Defendant's "balls," also meets the definition of a prohibited act as defined in La.R.S. 14:89.1(A)(2)(a), and therefore supports the conviction of a second, separate count of aggravated crime against nature. Again, the evidence introduced at trial is sufficient to show that the victim is Defendant's biological child.

The third separate act listed above, Defendant putting his "balls" in/on the victim's "butt," also meets the definition of a prohibited act as defined in La.R.S.

23

14:89.1(A)(2)(a), committed against Defendant's biological child, and therefore supports the conviction of a third count of aggravated crime against nature.

For these reasons, we find that a reasonable jury could have found the evidence satisfied, beyond a reasonable doubt, three separate counts of aggravated crime against nature, with a child under the age of thirteen. Therefore, Defendant's convictions for counts 10 through 12 in the bill of information for the offense of aggravated crimes against nature are affirmed.

*Oral Sexual Battery, Counts 7 – 9*

Louisiana Revised Statutes 14:43.3 defines oral sexual battery as follows:

A. Oral sexual battery is the intentional touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender, or the touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim, when any of the following occur:

(1) The victim, who is not the spouse of the offender, is under the age of fifteen years and is at least three years younger than the offender.

. . . .

(B) Lack of knowledge of the victim's age shall not be a defense.

After review of the evidence, we find that the fourth separate act listed above, Defendant putting his "balls" in the victim's mouth, was an "intentional touching" of the "genitals of the offender" by the victim using the "mouth . . . of the victim," and therefore satisfies the elements of oral sexual battery. La.R.S. 14:43.3. The record supports the fact that the victim was four years old at the time of the offense.

We find that a reasonable jury could have found, beyond a reasonable doubt, that the evidence satisfies one count of oral sexual battery of a child under the age of thirteen. However, we find that there is insufficient evidence to uphold the second and third counts of oral sexual battery. Therefore, Defendant's conviction for count 7 in the bill of information for oral sexual battery of a child under the age of thirteen

24

is affirmed, and his convictions for counts 8 and 9 in the bill of information for the offense of oral sexual battery are vacated.

*Sexual Battery, Counts 4 – 6*

Louisiana Revised Statutes 14:43.1 defines sexual battery as follows:

A. Sexual battery is the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, directly or through clothing, when any of the following occur:

(1) The offender acts without the consent of the victim.

(2) The victim has not yet attained fifteen years of age and is at least three years younger than the offender.

. . . .
B. Lack of knowledge of the victim's age shall not be a defense. However, normal medical treatment or normal sanitary care shall not be construed as an offense under the provisions of this Section.

After reading the record and considering the corroborating evidence, we find that the fifth separate act listed above, the victim rubbing Defendant's balls"/penis/ "stuff" with her feet, was an "intentional touching" of the genitals of Defendant by the victim using "any instrumentality or any part of the body of the victim," La.R.S. 14:43.1. Again, the record demonstrates the victim was four years old at the time of the offense.

We therefore find that a reasonable jury could have found, beyond a reasonable doubt, that the evidence satisfies one count of sexual battery of a child under the age of thirteen. However, we find that there is insufficient evidence to uphold Defendant's convictions for the two additional counts of sexual battery. Therefore, Defendant's conviction for count 4 in the bill of information for sexual battery of a child under the age of thirteen is affirmed, and his convictions for counts 5 and 6 in the bill of information for the offense of sexual battery are vacated.

*Indecent Behavior with Juveniles, Counts 1 – 3*

Indecent behavior with juveniles is defined by La.R.S. 14:81 as follows:

A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:

(1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child's age shall not be a defense[.]

As discussed above, we have identified five separate acts of criminal conduct committed by Defendant. We have also found that the evidence of these five separate acts is sufficient to support five separate convictions, aggravated crime against nature (three counts), oral sexual battery (one count), and sexual battery (one count). There is no other evidence in the record to sustain any of the counts of indecent behavior with juveniles, without using the same evidence or evidence which is lesser and included, which would then ignite a question of double jeopardy, as evaluated below. For these reasons, we vacate all three of Defendants convictions for indecent behavior with juveniles, which were included as counts 1 through 3 in the bill of information.

*Lack of Evidence of Twelve Separate Incidents*

The bill of information charges Defendant with twelve separate offenses. As explained above, a review of the record shows there is merit to Defendant's claim that the record lacks evidence of twelve different sexual acts between Defendant and the victim.

As noted by Defendant, the State's own witness, Detective Paulk, admitted that, except for the October 29, 2020, incident, the number of other incidents could not be determined and that she simply estimated a number based on the time the victim was alone with Defendant. Additionally, the victim's testimony lacks any

26

specificity as to when the acts alleged by the victim occurred or how often they occurred. The victim simply told the CAC interviewer the incidents happened "all the time" and "all day." We find that this general allegation from the victim was not sufficient to find Defendant committed all twelve sexual offenses against the victim.

In conclusion, after applying the evidence of the five separate acts delineated above to the elements of the charged offenses, we find there is insufficient evidence to support Defendant's three convictions for indecent behavior with a juvenile, two of Defendant's convictions for sexual battery, and two of Defendant's convictions for oral sexual battery. There is sufficient evidence, however, and the record supports Defendant's convictions for one count of sexual battery of a child under the age of thirteen, one count of oral sexual battery of a child under the age of thirteen, and three counts of aggravated crime against nature.

Therefore, Defendant's three convictions for aggravated crime against nature (counts 10 – 12), one conviction for oral sexual battery (count 7), and one conviction for sexual battery (count 4) are affirmed. Defendant's three convictions for indecent behavior with a juvenile (counts 1 – 3), two of his convictions for sexual battery (counts 5 and 6), and two of his convictions for oral sexual battery (counts 8 and 9) are vacated.

**ASSIGNMENT OF ERROR NO. 2:**

Defendant next asserts that his convictions for three counts of aggravated crimes against nature constitute double jeopardy as the convictions "used as an essential element of the crime[,] the same act or occurrence that was alleged in Counts 1-9[.]"

Our above determination, however, recognizes that the State presented evidence of five distinct acts supporting five distinct convictions. This determination pretermits consideration of Defendant's double jeopardy claim insofar as the double

jeopardy protection bars a second prosecution *for the same offense* as well as multiple punishments *for the same offense*. *See* U.S. Const. amend. V; La.Const. art. 1, § 15; *State v. Gasser*, 22-64 (La. 6/1/22), 346 So.3d 249.

Moreover, to the extent Defendant's initial convictions implicated the protections of double jeopardy, the remedy for a violation thereof would be to vacate the conviction and sentence for the less severely punishable offense(s) and to affirm the conviction and sentence for the more severely punishable offense(s). *See State v. Roe*, 14-2322 (La. 8/28/15), 177 So.3d 125.

As explained above, Defendant's convictions for the less severely punishable offenses have been vacated by application of the review for sufficiency of the evidence, as the State presented sufficient evidence of only five distinct offenses. By decree below, we vacate Defendant's remaining seven convictions, not due to the violation of double jeopardy, but due to a lack of evidence to support convictions for any further alleged offenses.

Defendant's argument that his convictions for aggravated crimes against nature constitute double jeopardy is therefore moot, as we have found that there was insufficient evidence to maintain all twelve counts listed in the bill of information.

**ASSIGNMENT OF ERROR NO. 3:**

Defendant argues that the trial court erred in allowing the SANE nurse, Ms. Thomas, to testify to second and third-hand hearsay about the alleged sexual abuse of the victim. Specifically, Defendant contends that Ms. Thomas testified as to a portion of her report in which she stated the victim's mother was told by the victim's grandmother that the victim told the grandmother her vagina was red and burning. Additionally, Defendant contends Ms. Thomas testified as to information she received from the victim's mother regarding the assault.

At trial, Ms. Thomas testified that prior to her examination of the victim, she spoke with the victim's mother, Ms. Durison, alone in Ms. Thomas' office. When she began to testify about what Ms. Durison had relayed to her about the assault, defense counsel objected to her testimony as hearsay. The trial court allowed the testimony, finding that it was "historical testimony for the purposes of medical treatment which is clearly an exception to the hearsay rule, so your objection is overruled." Ms. Thomas again began her testimony, which included information Ms. Durison had been told by the victim's grandmother. Defense counsel again objected, arguing "double hearsay", "[f]our times hearsay." The trial court reiterated that it would allow the testimony, "Not for the truth of the statement, for medical purposes." The trial court further stated that it would allow Ms. Thomas "to testify off of her medical report as to what information she relied on for treatment of [the victim]."

When testimony resumed, Ms. Thomas was asked what was relayed to her concerning the assault. Ms. Thomas testified the victim told her grandmother that the victim's "noonie" was red and that it burned and itched. The nurse also testified that she was told that the victim's "daddy" made her put his "balls" in her mouth and made her move her feet back and forth on his penis. The victim's mother believed that ejaculation took place, and that the victim's feet were wiped on a sheet. The victim's mother also told Ms. Thomas that the victim's "noonie" was red. Finally, Ms. Thomas testified that she was told by the victim's mother that Defendant's mother, Ms. Dufrane, told her Defendant had "messed with his sister, Tori, when she was younger." Defense counsel objected at this point, arguing that the State was "getting outside" of the information needed for the victim's treatment and "into more, and more hearsay." The trial court sustained the objection and asked the jury to disregard that last statement.

Defendant argues that Ms. Thomas was allowed to testify as to hearsay evidence that was not related to the victim's medical diagnosis or treatment. According to Defendant, Ms. Thomas, as a SANE nurse, examined the victim for forensic purposes, not for treatment or medical diagnosis; thus, she testified as to inadmissible hearsay. Because Ms. Thomas' testimony involved the central allegations in the case, Defendant contends the erroneous admission of her testimony was not a harmless error.

The State argues that even if Ms. Thomas' statements should not have been admitted, the jury had more than enough evidence to convict Defendant of all charges. Thus, the State contends that any error would be harmless.

*Law and Analysis*

Louisiana Code of Evidence Article 803 states, in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> **(4) Statements for purposes of medical treatment and medical diagnosis in connection with treatment.** Statements made for purposes of medical treatment and medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis in connection with treatment.

Hearsay concerning medical treatment was addressed in *State v. Mangrum,* 20-243, pp. 22-23 (La.App. 1 Cir. 2/22/21), 321 So.3d 986, 1000-01, *writ denied,* 21-401 (La. 10/1/21), 324 So.3d 1050:

> Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(C). Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802. Under La. C.E. art. 803(4), hearsay concerning medical treatment and diagnoses is admissible; if the principal reason for the medical examination, however, is forensic, then such hearsay is inadmissible. [**State v.**]

30

**Brand**, [16-960 (La.App. 1 Cir. 12/22/16) (unpublished opinion), *writs denied*, 17-167, 17-131 (La. 9/15/17), 225 So.3d 479] 2016 WL 7407414 at *2. A trial court's ruling on the admissibility of evidence will not be disturbed on appeal absent a clear abuse of the trial court's discretion. A trial court is vested with much discretion in determining whether the probative value of relevant evidence is substantially outweighed by its prejudicial effect. **Brand**, 2016 WL 7407414 at *4.

The supreme court has stated the following about the hearsay exception set forth in La.Code Evid. art. 803(4):

> Louisiana subscribes to the general rule that the hearsay exception in La. C.E. art. 803(4) ordinarily does not encompass statements ascribing fault in the cause of the injuries treated. *See* Comment (b) to Exception (4)(b) ("The phrase 'reasonably pertinent to treatment or diagnosis in connection with treatment' has been interpreted to limit the scope of this exception to the kind of statements that are usually relied upon by physicians in their diagnosis and treatment of patients. Thus, statements as to the cause of a condition not reasonably pertinent to diagnosis or treatment of it are not within the ambit of this exception.") (*citing* Fed.R.Evid. 803(4), Advisory Committee's Note (statements as to fault would ordinarily not qualify) (other citations omitted). *See, e.g., State v. Juniors,* 03-2425, p. 44 (La.6/29/05), 915 So.2d 291, 325 (upholding exclusion of medical records offered by the defendant containing the statement that the victim had been shot "by a disgruntled employee" because the statement by an unidentified person "was not reasonably related to diagnosis and treatment" of the victim suffering from a gunshot wound to the head, "and, thus, was not admissible as an exception to the hearsay rule pursuant to LSA-C.E. art. 803(4)."); *see also State v. Baldwin,* 96-1660 (La.12/12/97), 705 So.2d 1076, unpub'd appx. at xxii (trial court erred in admitting statement by victim to hospital personnel that she had been "beat[en] up by [her] husband" because the hearsay exception in Article 803(4) was "not so broad as to cover a statement as to the identity of the perpetrator.") (citing Official Comment (b).
>
> The hearsay exception provided by article 803(4) has, however, received particular application in cases of child sexual abuse, including statements of fault, because "'the legislature has expressed an overriding interest in protecting child victims of sexual abuse by encouraging the admission of reliable hearsay evidence for the trial court to weigh.'" *State v. Brown,* 97-2260, p. 8 (La.App. 4 Cir. 10/6/99), 746 So.2d 643, 648 (*quoting Folse v. Folse,* 98-1976, p. 19 (La.6/29/99), 738 So.2d 1040, 1050, and upholding admission of six-year-old victim's statement to a hospital physician that her father had put his penis in her) (footnote omitted). We recognize, as Judge Lobrano concluded, that La.C.E. art. 803(4), like its federal counterpart in Fed.R.Evid. 803(4), may encompass other instances in which the identity of a perpetrator plays an integral role in medical treatment and diagnosis in connection with that treatment. *See, e.g., United States v.*

*Joe,* 8 F.3d 1488, 1494-95 (10th Cir.1993) (Although "a declarant's statement relating the *identity* of the person allegedly responsible for her injuries is not ordinarily admissible under Rule 803(4) because statements of identity are not normally thought necessary to promote effective treatment. . . . The identity of the abuser is reasonably pertinent to treatment in virtually every domestic sexual assault case, even those not involving children. . . . The physician generally must know who the abuser was in order to render proper treatment because the physician . . . . may recommend special therapy or counseling and instruct the victim to remove herself from the dangerous environment by leaving the home and seeking shelter elsewhere.") (citations omitted).

. . . .

The trial court therefore erred in excluding the hospital records documenting the victim's initial treatment at Ochsner Hospital on February 23, 2013, during which she identified her assailant and placed the incident in the context of domestic violence, and the follow-up visit with Dr. Anderson on February 25,2013, during which the victim elaborated on her prior statements and received counseling on ways to change her behavior even as she insisted that she would not report the incident to the police. These statements are non-hearsay as a matter of La.C.Cr.P. art. 803(4) and are therefore admissible as substantive evidence because they were made for purposes of diagnosis and treatment, essential components under current medical practice in cases of domestic violence, and not as part of a forensic examination intended for use at trial. *Cf. State v. Watley,* 301 So.2d 332 (La.1974) (trial court erred in overruling hearsay objection to testimony of psychiatrist regarding his examination of victim immediately before trial for purposes of assessing her mental condition as it related to her capacity to resist sexual assault and including details of the offense provided by the victim).

*State v. Koederitz*, 14-1526, pp. 4-8 (La. 3/17/15), 166 So.3d 981, 984-86 (footnotes omitted).

The testimony at issue in this case was provided by Ms. Thomas, a Forensic Nurse Examiner. Ms. Thomas testified that she does "evidence collection on patients that have been abused or neglected." When Ms. Thomas examined the victim on October 30, 2020, she obtained the victim's medical history, observed the victim's demeanor, and spoke to the victim's mother regarding the complaint. When Ms. Thomas spoke with the victim, she explained that she was a "special nurse." When the victim told Ms. Thomas what had been happening to her, Ms. Thomas questioned

her about it. Ms. Thomas then examined the victim's body, documenting her findings on diagrams. Because the victim's vital signs had been taken in triage, Ms. Thomas did not take them herself. Ms. Thomas did not perform any DNA testing.

Although Ms. Thomas' report contains a section for "Recommended Medical Treatment and Discharge Instructions[,]" no recommendations or medications were made. According to the "Care Plan" section of the report, the victim was "[p]owerless related to sexual assault" and at "[h]igh risk for ineffective family coping related to sexual abuse/assault."

We find that even if it is questionable whether Ms. Thomas' testimony was admissible under La.Code Evid. art. 803(4), the admission of the testimony, even if erroneous, was nonetheless harmless. First, we note that the trial court properly ruled the testimony was admissible for medical purposes, not for its truth. Additionally, during her CAC interview, the victim gave the same testimony reiterated by Ms. Thomas. The supreme court recently stated, "An error is harmless beyond a reasonable doubt if it is unimportant in relation to the whole, and the verdict rendered is surely unattributable to the error." *State v. Brown*, 16-998, pp. 54-55 (La. 1/28/22), 347 So.3d 745, 791, *cert. denied,* U.S. S.Ct. (2023).

Considering the victim's CAC interview and Defendant's sister's testimony as to what the victim told her, we find that any error in admitting Ms. Thomas' testimony was harmless. Accordingly, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. 4:

In assignment of error number four, Defendant contends the sixty-year sentences he received for each conviction of aggravated crime against nature, counts 10 through 12, and each conviction for oral sexual battery, counts 7 through 9, are constitutionally excessive. As we have previously found that the convictions for counts 8 and 9 for oral sexual battery must be vacated, Defendant's arguments

33

regarding those convictions are rendered moot. Therefore, we limit our review of this issue to the three sixty-year sentences for aggravated crime against nature and one sixty-year sentence for oral sexual battery.

In his brief, Defendant argues that he was a first-time offender. He acknowledges that the allegations made against him are "bad," but contends "the acts alleged, "balls" in mouth, touching, feet touching penis, are objectively not as bad as other cases which would have justified such a large sentence. Defendant also notes there was no evidence of penetration and no signs of trauma to the victim. Defendant contends that the trial court impermissibly considered allegations that Defendant sexually touched his sister, Tori Bost, when they were both under the age of ten years old as evidence that it was "unlikely that Mr. Bost can rehabilitate and live a productive life upon release." According to Defendant, his sixty-year sentences are a de facto life sentence because he will be in jail until he is at least eighty-five years old. Considering the facts of this case, Defendant maintains, the sixty-year sentences are cruel and unusual punishment.

Defendant did not object to the sentences imposed at the time they were rendered by the trial court and did not file a motion to reconsider sentence. Louisiana Code of Criminal Procedure Article 881.1 provides the mechanism for preserving the review of a sentence on appeal:

> A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
>
> . . . .
>
> E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

Defendant is therefore precluded from appealing his sentence. *See State v. Duplantis*, 13-424 (La.App. 3 Cir. 11/27/13), 127 So.3d 143, *writ denied*, 14-283 (La. 9/19/14), 148 So.3d 949; *State v. Williams*, 01-998 (La.App. 3 Cir. 2/6/02), 815 So.2d 908, *writ denied*, 02-578 (La. 1/31/03), 836 So.2d 59; *State v. Bamburg*, 00-675 (La.App. 3 Cir. 11/2/00), 772 So.2d 356.

This court has, however, previously reviewed claims of excessiveness where no motion to reconsider sentence was filed or objection made. In those situations, this court has performed a bare excessiveness review. *State v. Debarge*, 17-670 (La.App. 3 Cir. 2/7/18), 238 So.3d 491; *State v. Price*, 16-899 (La.App. 3 Cir. 4/5/17), 216 So.3d 304; *State v. Soriano*, 15-1006 (La.App. 3 Cir. 6/1/16), 192 So.3d 899, *writ denied*, 16-1523 (La. 6/5/17), 219 So.3d 1111; *State v. Jackson*, 14-9 (La.App. 3 Cir. 6/18/14), 146 So.3d 631, *writ denied*, 14-1544 (La. 2/27/15), 159 So.3d 1066.

Louisiana courts have laid out the following guidelines for reviewing a sentence on a claim of excessiveness:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
>> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The

relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996)].

*State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

Since Defendant only challenges his sentences for his convictions of aggravated crime against nature (three convictions/sentences) and oral sexual battery (one conviction/sentence), our review will be limited to the penalty provisions for those offenses.

As noted by the trial court at sentencing, the applicable penalty provision for Defendant's conviction of oral sexual battery is La.R.S. 14:43.3(C)(2):

> Whoever commits the crime of oral sexual battery on a victim under the age of thirteen years when the offender is seventeen years of age or older shall be punished by imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit or parole, probation, or suspension of sentence.

For Defendant's conviction of aggravated crime against nature, the applicable penalty provision is La.R.S. 14:89.1(C)(2):

> Whoever commits the crime of aggravated crime against nature as defined by Paragraph (A)(2) of this Section with a victim under the age of thirteen years when the offender is seventeen years of age or older shall be punished by imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence shall be served without benefit of parole, probation, or suspension of sentence.

The trial court stated the following at sentencing:

> All right. Then it's -- I will go ahead and begin with sentencing. And, and as I always, um, say in a sentencing, this is the most difficult part of my job. It -- there are a lot of considerations that go into sentencing that, um, people may not realize. It's a, it's a balancing act and, um, sometimes, uh, I issue sentences which people don't understand and sometimes I – they do understand them, but I put a lot of effort into sentencing, and I don't take this lightly, and that's what I've done today. So one of the things I do when I sentence someone is go through a, a process that I call RSVP and it's where I, I review the, um, rehabilitation, society, the victim and punishment and, um, I did that in this case. I'm gonna go over those factors. Then I'm gonna go over the, the legislature mandates that I consider aggravating and mitigating factors before imposing a sentence, so I will go over those. I'll give both sides an opportunity to, um, contribute to those factors if they want. Once we do that, I'll give the State an opportunity to do victim impact statements or present anything else they'd like me to consider, and then I'll do the same for, um, the defense and, uh, give him an opportunity to speak if he so chooses.
>
> So, first I started with society and, um, that, that, um, factor asks what sentence today would serve as a general deterrence to, to the community, so here Mr. Bost was convicted of twelve sexual offenses all involving his natural daughter as the victim. She was only four years old at the time, so obviously deterrence to society is a strong consideration. I can't think of a more pressing concern in our country than protecting innocent children. Our legislature has taken on sex crimes by providing serious consequences, especially in instances involving victims under thirteen. In addition to mandatory minimum sentences, a person who sexually assaults a victim under the age of thirteen must undergo lifetime supervision by the Department of Public Safety and Corrections.
>
> Um, victim obviously is a huge consideration in this case. The victim was, uh, Mr. Bost's four year old daughter. Not only did she suffer horrible abuse at the hands of an adult, but it was at the hands of the one person in the world who she should expect her to - - expect to protect her from this evil. This type of trauma is something she'll have

37

to deal with throughout her life and the psychological scars will be immeasurable.

The last two sentencing factors are rehabilitation and punishment. On rehabilitation, the question is whether Mr. Bost can be rehabilitated and on punishment the question is what sentence would specifically deter Mr. Bost from future criminal conduct. So it's questionable, um, whether or not a pedophile can ever be fully rehabilitated which is exactly why the State requires lifetime registration for anyone convicted of a sexual offense under, involving a victim under the age of thirteen. In this case, the victim was only four years old. Clearly, prepubescent and clearly vulnerable. She relied on her father to teach her what was right and wrong but was blatantly betrayed by him instead. On the punishment, considering the fact that rehabilitation is questionable, punishment in this case must be something that will not only deter the defendant from future behavior but something that will also protect society against the same. So given all the particular circumstances of this event and especially considering the testimony regarding similar prior acts with a different victim, the Court feels it's unlikely that Mr. Bost can rehabilitate and live a productive life upon release. There seems to be a strong probability that he could reoffend if given the opportunity.

Having considered these four sentencing factors, the Court must also weigh the legislatively prescribed aggravating and mitigating factors. I find the aggravating factors to include, uh, the following: The offender's conduct during the commission of the crime manifested deliberate cruelty to the victim. The offender knew the victim of the offense was particularly vulnerable due to her extreme youth. The offender used his position or status as the victim's father to facilitate, facilitate the commission of the offense. The offense likely resulted in a significant -- will result in a significant and permanent, possibly permanent psychological injury to the victim and her family. The crimes for which he was convicted represents similar offenses which took place at different times over an undetermined period of time. The offender coerced the victim into keeping the sexual abuse secret causing her to bear the burden of not being able to reveal the horror she was experiencing.

The trial court gave the State the opportunity to present additional aggravating factors, but the State had none to present. The trial court then continued with the mitigating factors it considered:

All right. Uh, on mitigating circumstances. I, I didn't find much. Uh, the defendant has no prior felony arrest in Rapides Parish, although he does have two separate, uh, misdemeanor battery arrests.

When the trial court gave defense counsel an opportunity to present additional mitigating factors, defense counsel responded:

> [W]e would like the Court to take into consideration the previous incident that you've referred to occurred when both the alleged victim and Mr. Bost were both minors.[5]

The trial court agreed to take defense counsel's comments into consideration.

Over defense counsel's objection, the trial court heard a victim impact statement written by the victim's mother.

Defendant then gave the following statement to the trial court:

BY MR. BOST:

> Um, being as I provided most of the evidence here and, um, being as my daughter can come up and then come run up to me at any given time and she's just gonna come up to me with open arms and be like hey, Daddy, blah, blah, blah. There is a whole lot of misconception in the case here as well. There's a lot of false stuff like that because I'm not no sick individual here. My daughter loves me and all I've ever done was just try to be a good father, and the whole thing is about custody issue, and also the other, the other dude, Austin Ingo, that was speaking of in trial, um, to my knowledge that'd be him because all this stuff that's been taking place ever since I've been in jail, but then in the video when, when I said [A.D.] you need to tell (interrupted)
>
> . . . .

BY MR. BOST:

> -- you need, you need to tell Mommy (interrupted)

The trial court then stopped Defendant, stating that the case had already been tried before a twelve-person jury and Defendant had been convicted of all charges.

*Analysis*

Louisiana Code of Criminal Procedure Article 883 provides:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless

---

[5] We note that, in the context of this statement, defense counsel appears to be referring to the incident which was alleged to have occurred between Defendant and his sister, Tori Bost, when they were both minors.

the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.

In this case, the trial court ordered the sixty-year sentences for each count of aggravated crime against nature and each count of oral sexual battery to run concurrently, even though the offenses were arguably based on different acts or transactions that could have been ordered to run consecutively pursuant to La.Code Crim.P. art. 883. *See State v. H.B.*, 06-1436, p. 7 (La.App. 3 Cir. 4/4/07), 955 So.2d 255, 260, where this court stated, "Review of the jurisprudence shows that different victims, places, or dates mean different transactions and different schemes or plans."

Additionally, the sentences imposed were in the mid-range, far below the maximum ninety-nine-year sentences that could have been imposed by the trial court for each count of aggravated crime against nature and each count of oral sexual battery.

In *State v. Warmack*, 49,880 (La.App. 2 Cir. 5/20/15), 166 So.3d 424, a similar sentence was upheld for a conviction of aggravated incest and a conviction of molestation of a juvenile. Warmack (age fifty) was sentenced to concurrent sentences of sixty years at hard labor (aggravated incest) and thirty years at hard labor (molestation of a juvenile), each to be served without benefit of parole, probation, or suspension of sentence. *Id.* The victim in *Warmack* was the defendant's eleven-year-old daughter, who accused Warmack of inappropriately touching her, forcing her to engage in sexual-related activity, and showing her pornographic materials as well as other sexual items. *Id.* Upholding the sixty-year aggregate sentence, the second circuit noted the sentences were appropriately tailored to Warmack and were in the mid and lower ends of the sentencing ranges. *Id.* The

second circuit also noted that the trial court imposed the sentences concurrently, even though the crimes occurred on different days. *Id.* The court concluded:

> As noted by the sentencing court, Warmack victimized a particularly vulnerable child who was incapable of resistance due to extreme youth. He used his status as her father to facilitate the commission of crimes which caused the child permanent and severe emotional injury. Given the devastating facts of this case, the trial court was well within its discretion in imposing the chosen sentences. Accordingly, this assignment of error lacks merit.

*Id.* at 427.

In *State v. Thomas*, 51,761 (La.App. 2 Cir. 1/10/18), 245 So.3d 1174, the court upheld a fifty-year aggregate sentence (twenty-years to be served without benefits) for Thomas' guilty pleas to four counts of attempted aggravated crimes against nature. Thomas was a thirty-nine-year-old first offender. *Id.* Like the present Defendant, Thomas noted the trial court found he "would always be a danger to others and could not be rehabilitated." *Id.* The court noted that "Thomas admitted to engaging in sexual activities with his three-year-old stepdaughter multiple times over the course of three years." *Id.* at 1180. The court further noted that Thomas "forced the child to perform oral sex on him and threatened to kill her mother if she told anyone." *Id.*

In *State v. Faciane*, 19-702 (La.App. 3 Cir. 3/18/20), 297 So.3d 823, this court upheld concurrent sentences of fifteen years for five convictions of aggravated crimes against nature. Faciane was accused of having sexual intercourse with his stepdaughter over a three-and-one-half-year period. *Id.* The victim was fourteen when the offenses began. *Id.*

Although the sentences imposed in the present case are higher than some of the sentences in the above cases, the record shows the trial court gave ample reasons for the sentences imposed and appropriately considered aggravating and mitigating factors. We further note the supreme court's repeated admonition "that sentence

review under the Louisiana constitution does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is more appropriate in a given case." *State v. Savoy*, 11-1174, p. 5 (La. 7/2/12), 93 So.3d 1279, 1283 (citing *State v. Walker*, 00-3200 (La. 10/12/01), 799 So.2d 461; *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996); *State v. Humphrey*, 445 So.2d 1155 (La.1984)).

Although we have vacated some of the convictions and sentences that were originally lodged against Defendant, we nevertheless find the record fully supports the affirmation of the sentences imposed for Defendant's convictions for aggravated crime against nature and the remaining conviction for oral sexual battery.

Accordingly, we find the concurrent sixty-year sentences imposed for the three convictions of aggravated crime against nature and one conviction of oral sexual battery are not excessive. Thus, this assignment of error lacks merit.

## **ASSIGNMENT OF ERROR NO. 5:**

In his final assignment of error, Defendant asserts his trial counsel was ineffective for failing to object to the sentences imposed and failing to file a motion to reconsider sentence. Defendant argues his trial counsel was "per se ineffective for not formally objecting or filing a motion to reconsider based on the court's consideration of irrelevant evidence."

*Analysis*

> Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. *State v. Prudholm,* 446 So.2d 729 (La.1984); *State v. Johnson*, 557 So.2d 1030 (La.App. 4 Cir.1990); *State v. Reed,* 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. *State v. Seiss*, 428 So.2d 444 (La.1983); *State v. Ratcliff*, 416 So.2d 528 (La.1982);

*State v. Garland*, 482 So.2d 133 (La.App. 4 Cir.1986); *State v. Landry*, 499 So.2d 1320 (La.App. 4 Cir.1986).

The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Fuller,* 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that he was prejudiced by the deficiency. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. *Strickland, supra*, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland, supra*, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. *State v. Sparrow,* 612 So.2d 191, 199 (La.App. 4 Cir.1992).

This Court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." *State v. Bienemy*, 483 So.2d 1105 (La.App. 4 Cir.1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." *State v. Brooks*, 505 So.2d 714, 724 (La.1987).

*State v. Griffin*, 02-1703, pp. 8-10 (La.App. 4 Cir. 1/15/03), 838 So.2d 34, 40, *writ denied*, 03-809 (La. 11/7/03), 857 So.2d 515.

The failure to make or file a motion to reconsider sentence does not necessarily constitute ineffective assistance of counsel. Nevertheless, a defendant may have a basis to claim ineffective assistance when he can show a reasonable probability that but for defense counsel's error, his sentence would have been different. *State v. Blake*, 03-1465 (La.App. 3 Cir. 5/5/04), 872 So.2d 602. Furthermore, in *State v. Francis*, 99-208 (La.App 3 Cir. 10/6/99), 748 So.2d 484, *writ denied,* 00-544 (La. 11/13/00), 773 So.2d 156, this court noted that where the record was sufficient to resolve the claim and the claim was raised by assignment of

error on appeal, it may be considered. We find the record is sufficient to address the claim of ineffective assistance of counsel for failure to make or file a motion to reconsider the sentences.

Defendant contends that the prejudice he has suffered is "self-evident" and he should be given either a new sentencing hearing or a hearing to determine the effectiveness of his trial counsel. The error Defendant focuses on is trial counsel's failure to object to the trial court's "heavy reliance" on the sexual incident that happened between Defendant and his sister, Tori Bost, when they were young. According to Defendant, trial counsel's request that the trial court consider Defendant's young age at the time of the incident was not sufficient.

As previously discussed, the sentences imposed by the trial court as to Defendant's remaining convictions are not excessive. Although the trial court addressed the incident between Defendant and his sister when imposing the sentences, the trial court took "into consideration" the fact that Defendant and his sister were minors at the time of the incident. Additionally, the trial court's reasons when imposing the sentences mainly focused on Defendant's conduct toward the victim in this case. The trial court mentioned the victim's young age and the fact that she was his natural daughter. Of particular concern to the trial court was the protection of young children. Additionally, the trial court noted that the victim not only suffered horrible abuse but suffered it at the hands of the person she expected to protect her. This type of trauma, the trial court stated, would be something the victim will have to deal with throughout her life. Finally, the trial court noted Defendant knew the victim was particularly vulnerable and used his position as her father to facilitate the commission of the offenses.

Considering the record before us, we find Defendant has failed to prove an objection to his sentences or a motion to reconsider sentence would have resulted in a lesser sentence. Therefore, the failure to make an objection or file a motion to reconsider sentence in this case did not result in ineffective assistance of counsel. Accordingly, this assignment of error lacks merit.

## DECREE

For the reasons set forth, we affirm the following convictions and sentences:

> Count 10, Count 11, and Count 12 for aggravated crime against nature, in violation of La.R.S. 14:89.1, with a sentence of sixty years at hard labor, without benefit of parole, probation, or suspension of sentence for each of the three counts.

> Count 7 for oral sexual battery of a child under the age of thirteen, in violation of La.R.S. 14:43.3, with a sentence of sixty years at hard labor, without benefit of parole, probation, or suspension of sentence.

> Count 4 for sexual battery of a child under the age of thirteen, in violation of La.R.S. 14:43.1, with a sentence of forty years at hard labor without benefit of parole, probation, or suspension.

We further affirm the trial court's order that all sentences are to run concurrent with one another.

We vacate the following convictions and attendant sentences for:

> Count 1, Count 2, and Count 3 for indecent behavior with a juvenile under the age of thirteen in violation of La.R.S. 14:81, with sentences of twenty years at hard labor without benefit of probation, parole, or suspension of sentence for each count.

> Counts 5 and Count 6 for sexual battery of a child under the age of thirteen, in violation of La.R.S. 14:43.1, with sentences of forty years at hard labor without benefit of parole, probation, or suspension of sentence for both counts.

> Counts 8 and 9 for oral sexual battery of a child under the age of thirteen, in violation of La.R.S. 14:43.3, with sentences of sixty years at hard labor without benefit of parole, probation, or suspension of sentence for both counts.

We further order and remand this matter with instruction that the trial court correct the minutes of sentencing to accurately reflect that the trial court imposed these affirmed convictions and sentences on "each count." The trial court shall further correct the minutes to delete the statement "subject to work release" and amend the minutes to accurately reflect the trial court's statement at sentencing regarding work release, providing the defendant with notice of the amended/corrected minutes within 30 days of rendition of this opinion.

**CONVICTIONS AND SENTENCES ARE AFFIRMED, IN PART, AND VACATED, IN PART; CASE REMANDED WITH INSTRUCTIONS.**